EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| United Surety & Indemnity Company<br><br>      Peticionario<br><br>              v.<br><br>Marisol Marchand Castro<br>Registradora de la Propiedad<br>Sección Primera de San Juan<br><br>      Recurrido | Certiorari<br><br>2015 TSPR 4<br><br>192 DPR ____ |

Número del Caso: RG-2014-2


Fecha: 13 de enero de 2015


Abogado de la Parte Peticionaria:

      Lcdo. Héctor Saldaña Egozcue
      Lcdo. Carlos Lugo Fiol
      Lcda. Cybele Delgado Rivera


Parte Recurrida:

      Hon. Marisol Marchand Castro


Materia: Derecho Inmobiliario Rigistral – Inscripción de documento administrativo otorgado por el CRIM sobre traspaso de hipoteca legal tácita ante el Registro de la Propiedad.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| United Surety & Indemnity Company<br><br>Peticionario<br><br>v.<br><br>Marisol Marchand Castro Registradora de la Propiedad Sección Primera de San Juan<br><br>Recurrido | RG-2014-0002 | |

Opinión del Tribunal emitida por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ.

San Juan, Puerto Rico, a 13 de enero de 2015.

El recurso presentado nos permite determinar si el documento administrativo otorgado por el Centro de Recaudación de Ingresos Municipales para transferirle a una fiadora la hipoteca legal tácita que se constituye a su favor, por concepto de las contribuciones de ingresos municipales sobre la propiedad inmueble, es inscribible ante el Registro de la Propiedad.

Procedemos a delimitar el escenario fáctico y procesal que originó el recurso que tenemos ante nuestra consideración.

I

La controversia de autos gira en torno a una finca del Municipio de San Juan (Municipio), cuyo derecho de superficie y el derecho de construir en la referida finca

fueron cedidos a Paseo Portuario and Company S.E. (Paseo Portuario).[1] A su vez, Paseo Portuario transfirió el arrendamiento del derecho de superficie a Rexam Limited Partnership. Luego, el derecho de superficie y la titularidad de la propiedad edificada (Edificio Portuario) se cedieron a favor de Colonial Parking Corporation (Colonial).

En virtud del tracto descrito, Colonial advino dueña del derecho de superficie de la finca del Municipio, así como del Edificio Portuario. Ante esto y según se desprende del recurso presentado, Colonial alegó ante el Centro de Recaudación de Ingresos Municipales (CRIM) que por el edificio estar construido sobre una propiedad del Municipio estaba exento de pagar contribuciones. El CRIM rechazó este argumento y solicitó que se presentara una fianza de garantía financiera para garantizar la deuda sobre la propiedad inmueble impuesta al Edificio Portuario.

En consecuencia, a solicitud de Colonial, el 31 de marzo de 2008 United Surety & Indemnity Company (USIC) emitió la fianza de garantía financiera número 08123361 (fianza), por la suma inicial de $1,575,000. En ésta, USIC se obligó solidariamente con Colonial por el pago de las contribuciones sobre la propiedad inmueble correspondiente

---

[1] Esta finca consta inscrita en el Folio 187 del Tomo 175, Registro de la Propiedad, Sección Primera de San Juan.

al Edificio Portuario. Posteriormente, la fianza de garantía se incrementó a $1,975,000.

Luego de otorgada esta garantía, Colonial se convirtió en un contribuyente moroso. Por tanto, el 14 de marzo de 2011 el CRIM emitió una misiva en la cual solicitó hacer efectiva la fianza que garantizaba la deuda. El 26 de abril de 2011 el CRIM envió una segunda reclamación reiterando que no pudo llegar a un acuerdo con Colonial, por lo que para cobrar la deuda contributiva no le quedaba otra alternativa que ejecutar la fianza. Esta reclamación fue reiterada en una tercera misiva emitida el 18 de mayo de 2011. En todos estos requerimientos, el CRIM solicitó el pago de $1,975,000.

Ante estas reclamaciones, el 11 de octubre de 2011 USIC pagó al CRIM la cantidad de $1,812,442.03. Este pago fue realizado mediante dos cheques: el número 3909 por la cantidad de $367,170.33 con el cual se acreditó el pago de la deuda corriente; y el número 3910 por $1,445,271.70, mediante el cual se pagó la deuda contributiva sobre la propiedad inmueble impuesta al Edificio Portuario para los años fiscales 2003-2010.

En consideración a estos pagos, el 5 de diciembre de 2011 el Sr. Gustavo A. Freyre Conde, Subdirector Ejecutivo del CRIM, emitió ante la notario Tania Xiomara Laporte Reverón un documento administrativo de cesión a favor de USIC. En éste, se estableció que al 11 de octubre de 2011 Colonial le adeudaba al CRIM la cantidad de $2,506,298.34

por concepto de contribuciones de ingresos municipales sobre la propiedad inmueble con número de catastro 040-003-089-04-000, a la cual nos hemos referido como Edificio Portuario. Se estableció, además, que en virtud de esta deuda y la garantía emitida por USIC, este último se acogió a los beneficios de amnistía contributiva contenidos en la Ley Núm. 94-2011, 21 LPRA sec. 5001, y satisfizo la deuda. A tenor con estos sucesos, se consignó la siguiente cláusula:

> CUARTO: En consideración al referido pago, por la presente CRIM cede y traspasa a USIC todos sus derechos y acciones contra Colonial; resultantes y a consecuencia de la deuda por concepto de contribuciones de ingresos municipales sobre la propiedad inmueble con número de catastro 040-003-089-04-000 vencida al 01/07/2011, y que se encuentran comprendidas en el pago realizado por USIC. Así pues USIC queda subrogada en todos los derechos y acciones del CRIM en contra de Colonial.[2]

Además de cederle los derechos y acciones que el CRIM ostentaba en contra de Colonial, en el referido documento se relevó a USIC de todas las obligaciones con respecto a la fianza que ésta había emitido.

Así las cosas, el 8 de febrero de 2012 USIC presentó una *Instancia para Inscribir Gravamen sobre la Propiedad* (Instancia) en la Sección Primera del Registro de la Propiedad de San Juan. En ésta, expuso el cuadro fáctico que hemos descrito y arguyó que por virtud del Código Civil se subrogó en todos los derechos que el CRIM poseía en contra de Colonial y terceros. Alegó, además, que entre

---

[2] *Véase Cesión* otorgada por el CRIM el 5 de diciembre de 2011, Apéndice del Recurso Gubernativo, págs. 36-37.

los derechos en los que se subrogó se encuentra el gravamen preferente a favor del CRIM. Por consiguiente, solicitó que se inscribiera a su favor el asiento definitivo del gravamen preferente sobre la finca. La Instancia fue presentada con varios documentos adicionales. Entre ellos, se encuentra la *Cesión* otorgada por el CRIM, el Contrato de Fianza, los cheques emitidos a favor del CRIM y los recibos de pago otorgados por este último.

Luego de presentados estos documentos en el Registro de la Propiedad y mientras estaba pendiente su calificación, USIC recurrió al Tribunal de Primera Instancia con una demanda sobre cobro de dinero, incumplimiento de contrato y ejecución de embargo contra Colonial y American Parking System, Inc., entre otros. En ésta, solicitó que el Tribunal le ordenara a Colonial el pago de $1,812,442.03, además de los gastos y honorarios por el pleito instado. Asimismo, dado que el gravamen estaba pendiente de inscripción ante el Registro de la Propiedad, solicitó que una vez éste fuera calificado se ordenara la ejecución de embargo para proceder a vender en pública subasta el derecho de superficie y la titularidad del Edificio Portuario *ad terminum annorum* que Colonial ostentaba en torno a la finca.

El 4 de enero de 2013 la Hon. Marisol Marchand Castro, Registradora de la Propiedad de la Sección Primera de San Juan (Registradora), emitió una notificación

informando que no procedía la inscripción del asiento solicitado por USIC. En particular, hizo constar lo siguiente: "[s]e solicita la anotación de Embargo mediante Instancia. Por naturaleza del embargo solicitado, que es en base (sic) a cobro de dinero, la Ley Hipotecaria requiere que se practique en virtud de Orden del Tribunal".[3]

Ante esta notificación, el 24 de enero de 2013 USIC presentó un *Escrito de Recalificación*. En esencia, argumentó que lo que solicitó fue la inscripción de un gravamen preferente adquirido por subrogación y cesión, no un embargo a base de una acción en cobro de dinero. A pesar de esto, el 27 de marzo de 2014 la Registradora se sostuvo en su calificación inicial y denegó la inscripción solicitada.

Por consiguiente, el 16 de abril de 2014 USIC recurrió ante nos y objetó la calificación otorgada por la Registradora. Argumentó que ésta erró al requerir una orden judicial para inscribir el gravamen preferente. Ello, debido a que los Arts. 1738 y 1166 del Código Civil de Puerto Rico, 31 LPRA secs. 4912, 3250, le conceden a USIC el derecho a subrogarse en todas las acciones que el CRIM habría podido ejercitar contra Colonial. Arguyó que al USIC pagar la deuda contributiva, el derecho de cobro y sus garantías accesorias pasaron a su patrimonio por disposición de ley, es decir, automáticamente.

---

[3] *Véase* Notificación de la Registradora de la Propiedad, Apéndice del Recurso Gubernativo, pág. 100.

Asimismo, USIC alegó que la Registradora erró al no reconocer que la hipoteca legal tácita puede ser transferida. Adujo que la propia Ley Hipotecaria y de Registro de la Propiedad de 1979 (Ley Hipotecaria) permite su transmisión y que el documento otorgado por el CRIM es suficiente para ser inscrito en el Registro de la Propiedad. Ello, debido a que, por analogía, a USIC le aplica el mismo procedimiento que por virtud de ley se instituyó a favor del CRIM.[4] En consecuencia, alegó que tanto la Instancia como los documentos complementarios presentados eran suficientes para que se reconociera e inscribiera el gravamen a favor de USIC.

Por su parte, la Registradora expuso que la Instancia presentada no constituye un documento suficiente para inscripción. Empero, explicó que como de ésta se desprende que había una acción de cobro de dinero pendiente, le aplicó las disposiciones que regulan las anotaciones preventivas de demanda y embargo, y requirió una orden judicial para la anotación del gravamen.[5]

Por otro lado, por primera vez, la Registradora expresó que la extensión de la subrogación de derechos y acciones de USIC como fiadora y la determinación de si procedía inscribir como gravamen o un embargo en cobro de

---

[4]*Véase* Art. 4.06 de la Ley Núm. 83-1991, conocida como la Ley de Contribución Municipal sobre la Propiedad de 1991 (Ley Núm. 83-1991), 21 LPRA sec. 5106.

[5]*Véanse* Arts. 112, 113, 114 y 118 de la Ley Hipotecaria de Registro de la Propiedad de 1979, 30 LPRA secs. 2401-2403, 2407.

dinero, es un asunto de exclusiva competencia judicial. No obstante, arguyó que en la medida que se aprobó la legislación sobre la venta de deudas contributivas,[6] se puso en duda la transferibilidad automática de la hipoteca legal tácita que opera a favor del CRIM. Ello, debido a que el legislador consideró necesario consignar la transferencia expresamente. Además, destacó que la mencionada ley solamente contempla la transferibilidad de las deudas contributivas morosas, es decir, aquellas contribuciones que no han sido pagadas. Por tanto, concluye que sería inaplicable a la situación de autos en la medida que USIC ya pagó las contribuciones que Colonial le adeudaba al CRIM.

Por último, la Registradora sostuvo que el documento de *Cesión* otorgado por el Subdirector Ejecutivo del CRIM tampoco sería inscribible, debido a que no se describe la finca según requiere el Art. 4.06 de la Ley Núm. 83-1991, conocida como la Ley de Contribución Municipal sobre la Propiedad de 1991 (Ley Núm. 83-1991), 21 LPRA sec. 5106. Además, porque el Subdirector Ejecutivo del CRIM que lo suscribió no está facultado por ley para llevar a cabo ese tipo de transacciones.

Ante estas alegaciones, y en respuesta a las nuevas contenciones de la Registradora, el 30 de mayo de 2014 USIC presentó una *Réplica al Alegato de la Honorable*

---

[6]*Véase* Ley Núm.21-1997, conocida como la Ley de Venta de Deudas Contributivas, 21 LPRA sec. 5921 et seq. (Ley Núm. 21-1997).

*Registradora de la Propiedad*. En esencia, argumentó que el documento reconocido ante notario debe ser considerado como uno auténtico susceptible de inscripción bajo la Ley Hipotecaria. Además, reiteró que en el caso de autos operó una subrogación automática en la medida que el pago hecho por USIC no extinguió la obligación principal. Finalmente, adujo que la Registradora estaba obligada a notificar todas las faltas que impedían la calificación de los documentos presentados; por lo que todas las deficiencias que fueron señaladas por primera vez ante esta Curia son tardías y no deben ser consideradas.

Expuesto el trasfondo fáctico y procesal del recurso ante nos, corresponde esbozar el derecho aplicable para poder disponer del caso en los méritos.[7]

---

[7]Luego de que el recurso quedara sometido en los méritos, el 31 de julio de 2014 compareció ante nos First Bank Puerto Rico (First Bank), mediante una *Solicitud de Intervención y Oposición a Recurso Gubernativo*. En ésta, nos solicita que le concedamos intervenir debido a que como acreedor hipotecario de primer rango de la finca núm. 4678, su derecho puede quedar afectado si se inscribe el gravamen preferente reclamado por USIC. Expone que la validez de la cesión y subrogación de USIC en los derechos preferentes que ostentaba el CRIM está dilucidándose en el Caso Civil Núm. K CD2012-2110 (906) presentado por USIC contra Colonial y en el cual First Bank participa como interventor. Asimismo, nos indica que instó un procedimiento civil (K CD2013-1603 (908)) contra Colonial por cobro de dinero. Ante esta solicitud, USIC presentó una *Oposición a Solicitud de Intervención,* la cual fue procedida por una *Breve Réplica a Oposición a Solicitud de Intervención* y una *Dúplica a Breve Réplica a Solicitud de Intervención.* En sus oposiciones, USIC alega que el pleito iniciado por First Bank desembocó en una ejecución en pública subasta donde a este último le fue adjudicada la propiedad que ostentaba Colonial, lo cual hace improcedente el reclamo que éste trae sobre cómo la resolución de esta controversia puede afectar su rango.

II

Como cuestión de umbral, debemos delimitar cuáles son los parámetros que en nuestro ordenamiento jurídico rigen la calificación registral, particularmente, de aquellos documentos que son otorgados por agencias administrativas.

A.

En primer lugar, el Art. 38 de la Ley Hipotecaria, 30 LPRA sec. 2201, establece cuáles títulos, actas y contratos tienen acceso al Registro de la Propiedad. En éste, se contempla la inscripción de la constitución, traslación, declaración o extinción del dominio de los bienes inmuebles o de los derechos reales que son impuestos sobre ellos, entre otras disposiciones.[8]

---

Como es sabido, la calificación Registral se limita a determinar si procede o no la inscripción solicitada, sin prejuzgar los derechos de las partes. Es decir, el Registrador no convalida actos o contratos nulos ni adjudica derechos, pues procede que éstos sean dilucidados en los tribunales mediante juicios plenarios en los que se reciba prueba por las partes en contienda. *Véanse* Cabrer v. Registrador, 113 DPR 424 (1982); Luis R. Rivera Rivera, Derecho Registral Inmobiliario Puertorriqueño, Puerto Rico, Jurídica Editores, 2012, págs. 275-276. Dicho esto, no procede permitir esta intervención, sino que tanto los reclamos planteados por First Bank como USIC continúen dilucidándose según dispone nuestro ordenamiento procesal civil.

[8]Esta disposición es complementada por el Art. 37.2 del Reglamento para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad, 30 LPRA sec. 870.177 (ed. 2010), el cual expresamente establece que:

[c]onforme a lo dispuesto en el Artículo 38, inciso 1ro. . . será inscribible cualquier acto o contrato de trascendencia real que modifique en alguna forma las facultades del dominio sobre bienes inmuebles o inherentes a derechos reales.

Ahora bien, es el Art. 42 de la Ley Hipotecaria, 30 LPRA sec. 2205, el cual prescribe la forma en que los documentos podrán ser inscritos.

> Para que puedan ser inscritos los títulos a los que se refiere la sec. 2201 de este título, deberán constar en escritura pública, ejecutoria o documento auténtico expedido por autoridad judicial o funcionario competente, en la forma que prescriban las leyes y reglamentos, salvo en los casos en que expresamente la ley establezca una forma distinta.

Lo anterior es complementado por el Art. 43 de la Ley Hipotecaria, 30 LPRA sec. 2206, el cual establece que:

> [s]e entenderá por título, conforme a la sección anterior y para los efectos de la inscripción, el contenido del documento o documentos públicos en que funde inmediatamente su derecho la persona a cuyo favor haya de practicarse aquélla y que hagan fe, por sí solos o con el de otros documentos complementarios, o mediante formalidades cuyo cumplimiento se acredite.

Este último procede del Art. 33 del Reglamento Hipotecario Español. Al interpretarlo, los tratadistas españoles concluyen que al referirse a "documento o documentos públicos" se incorpora la normativa del Art. 1.216 del Código Civil Español, el cual equivale al Art. 1170 del Código Civil de Puerto Rico, 31 LPRA sec. 3271. Es decir, para que un documento sea público es necesario que esté autorizado por un notario o empleado público competente. Ramón M. Roca Sastre, Luis Roca-Sastre Muncunill & Joan Berná i Xirgo, Derecho Hipotecario, 9na ed., Barcelona, Ed. Bosch, 2009, T.I, pág. 512. Asimismo, reconocen que por virtud de este artículo, el derecho de un posible titular registral debe surgir directamente del

documento presentado. Íd., pág. 513. Los tratadistas también entienden que la referencia a que éste dé fe por sí mismo o en conjunto con otros documentos es redundante en la medida en que ésta es la función típica de todo documento público. No obstante, expresan que esto implica la necesidad de que se acredite el acto o negocio jurídico que se pretende inscribir. Íd., pág. 514.[9]

Pertinente a la controversia de autos, nos concentraremos en la inscripción de documentos administrativos. Según establece el mencionado Art. 42 de la Ley Hipotecaria, para que éstos puedan ser inscritos deben estar en un documento auténtico suscrito por un funcionario con competencia. En torno a este particular, el Art. 57.1 del Reglamento para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad (Reglamento Hipotecario), establece que:

> [s]e considerarán documentos administrativos auténticos para los efectos de la ley los que están expedidos por el Estado o por autoridad o funcionario competente.
>
> Los documentos administrativos deberán estar certificados y expedidos en la forma y con las solemnidades que prescriben las leyes sobre la materia y harán constar las circunstancias que para los asientos del Registro requieran la "Ley Hipotecaria y del Registro de la Propiedad"

---

[9]En armonía con la doctrina española, este Tribunal ha entendido que como corolario de este artículo procede distinguir entre el documento principal inscribible y los documentos complementarios, los cuales aunque carecen de autonomía para ser inscritos, complementan aquellos aspectos necesarios para que el principal sea inscribible. Véanse Pino Development Corp. v. Registrador, 133 DPR 373, 381-382 (1993); Figueroa Pesante v. Registrador, 126 DPR 209, 212-214 (1990).

y este capítulo. 30 LPRA sec. 870.207 (ed. 2010).[10]

A pesar de que la ley no define lo que implica ser una autoridad o funcionario competente, la doctrina sí lo ha hecho. Roca Sastre, Roca-Sastre Muncunill y Berná nos explican que "[p]ara que la Autoridad o Funcionario sea competente precisa que su nombramiento sea legal, que se halle en el ejercicio de sus funciones y que obre dentro de su propia esfera de actuación, tanto por razón del lugar como del objeto y, en su caso, cuantía del asunto". Roca Sastre y otros, op. cit., T.I, pág. 485. Es decir, que tenga competencia en torno a la materia respecto a la cual está disponiendo. Para el tratadista Rivera Rivera, esta "norma responde al principio de legalidad en su modalidad de *titulación auténtica*, de manera que los documentos ofrecen una garantía por haber sido autorizados o expedidos por un funcionario". Luis R. Rivera Rivera, Derecho Registral Inmobiliario Puertorriqueño, Puerto Rico, Jurídica Editores, 2012, págs. 85-86.

---

[10]En referencia a ello, el tratadista Rivera Rivera contempla las certificaciones de embargo, las concesiones administrativas y las certificaciones del Estado como ejemplos de los documentos administrativos que pueden ser inscritos en el Registro de la Propiedad. Rivera Rivera, op. cit., pág. 90. Por su parte, los españoles Roca Sastre, Roca-Sastre Muncunill y Berná, entienden que bajo este supuesto hay un sinnúmero de documentos que pueden provocar asientos en el Registro de la Propiedad. Claro está, siempre que cumplan con las formalidades que prescriben los reglamentos y las leyes aplicables. Ramón M. Roca Sastre, Luis Roca-Sastre Muncunill & Joan Berná i Xirgo, Derecho Hipotecario, 9na ed., Barcelona, Ed. Bosch, 2009, T.I, pág. 483.

Sin embargo, esto no implica que estos documentos estén exentos de cumplir con el principio de especialidad que rige en nuestro sistema de inscripción registral. Por consiguiente, éstos "expresarán, por lo menos, todas las circunstancias que necesariamente debe contener la primera inscripción y sean relativas a las personas de los otorgantes, a las fincas y a los derechos objeto de la inscripción (Art. 61 de la Ley)". Íd., pág. 86.

B.

Ahora bien, una vez presentado el documento, procede que el Registrador ejerza su gestión calificadora y evalúe o compruebe su legalidad. Es decir, le corresponde determinar si el documento es inscribible, como corolario del principio de legalidad contenido en el Art. 64 de la Ley Hipotecaria, 30 LPRA sec. 2267. De acuerdo a este principio, el Registrador debe asegurarse que el documento presentado sea válido y perfecto. SLG Pérez Rivera v. Registradora, res. el 30 de octubre de 2013, 2013 TSPR 122, pág. 5, 189 DPR ___ (2013). Ello, debido a que solamente tendrán acceso aquellos que cumplan con las exigencias legales aplicables. Rigores v. Registrador, 165 DPR 710, 720 (2005). (Citas omitidas). Véase, además, R&G Premier Bank P.R. v. Registradora, 158 DPR 241, 246 (2002).

En general, según dispuesto por la Ley Hipotecaria, esta calificación debe ceñirse a: (1) las formas extrínsecas de los documentos que se presentan, (2) la

capacidad de los otorgantes y (3) la validez de los actos y contratos que contienen estos documentos. Art. 64 de la Ley Hipotecaria, 30 LPRA sec. 2267. Empero, en cuanto a la calificación de los documentos administrativos específicamente, el referido Art. 64 establece que éstos deberán ser evaluados en la misma extensión que los judiciales. Por tanto, el Registrador se limitará a calificar: (1) la competencia y jurisdicción del órgano administrativo; la naturaleza y los efectos de la resolución dictada, si se produjo en el procedimiento correspondiente y se observaron los trámites y preceptos esenciales para su validez; (2) las formalidades extrínsecas de los documentos presentados; y (3) los antecedentes en el Registro de la Propiedad. Roca Sastre y otros, op. cit., T.I, pág. 662.

Al igual que ocurre con los documentos judiciales, "debe excluirse de la función calificadora del Registrador lo relativo a la legitimación de los interesados que insten algún acto administrativo, al orden riguroso del procedimiento y al fundamento de las decisiones administrativas". Íd. En fin, al igual que con los documentos judiciales, al calificar documentos administrativos, el Registrador tiene una facultad más limitada.[11]

---

[11]Para una discusión en torno a la función limitada que tiene el Registrador en cuanto a la calificación de documentos judiciales, a manera de ejemplo, véanse Popular Mortgage v. Registrador, 181 DPR 625 (2011); P.R Prod. Credit Assoc. v. Registrador, 123 DPR 231 (1989).

Para poder desempeñar su función dentro de los confines que hemos descrito, el Registrador deberá circunscribirse a los documentos que le son presentados, los asientos registrales vigentes y las leyes. Art. 64 de la Ley Hipotecaria, 30 LPRA sec. 2267. En otras palabras, éste no puede recurrir a información que no conste en los títulos presentados o el contenido del Registro. SLG Pérez Rivera v. Registradora, *supra*.

No obstante, es importante puntualizar que la calificación que a estos efectos realice el Registrador "no impedirá ni prejuzgará el juicio que pueda seguirse en los tribunales sobre la validez de los documentos calificados, debiendo atenerse el registrador a lo que en aquél se resuelva". Art. 67 de la Ley Hipotecaria, 30 LPRA sec. 2270. *Véanse*, además, Cabrer v. Registrador, 113 DPR 424 (1982); Nido & Cía., S. en C. v. Registrador, 74 DPR 789, 799 (1953).

III

A la luz de las disposiciones anteriores, nos corresponde analizar el negocio jurídico que se suscitó entre las partes para poder determinar si los documentos presentados ante la Registradora eran inscribibles o si, en efecto, se requería una orden judicial. Procedemos.

A.

Según hemos expuesto, USIC comenzó su relación con el CRIM mediante un contrato de fianza en el cual se garantizaba la deuda por concepto de contribuciones

municipales sobre la propiedad inmueble de Colonial. Como consecuencia, nos es preciso delimitar brevemente las disposiciones aplicables a este tipo de negocio jurídico.

Como es sabido, la fianza es una garantía personal en la que se le "proporciona al acreedor mayor probabilidad de ver satisfecho su interés, ya que se amplía su poder de agresión a un patrimonio distinto del originariamente responsable". J.L. Lacruz Berdejo, F.A. Sancho Rebullida, et al., Elementos de Derecho Civil II, 3ra ed., Barcelona, Ed. Bosch, S.A., 1995, V.II, pág. 339. Ello, debido a que mediante "la fianza se obliga uno a pagar o cumplir por un tercero, en el caso de no hacerlo éste". Art. 1721 del Código Civil de Puerto Rico, 31 LPRA sec. 4871. Por tanto, mediante contrato expreso el fiador se puede obligar a menos, pero nunca a más de lo que se obligó el principal. Arts. 1725 y 1726 del Código Civil de Puerto Rico, 31 LPRA secs. 4875, 4876. Véase, además, Andamios de P.R. v. Newport Bonding, 179 DPR 503, 511 (2010).

A tenor con esta normativa, en nuestro ordenamiento "[e]l fiador se subroga por el pago en los derechos que el acreedor tenía contra el deudor". Art. 1738 del Código Civil de Puerto Rico, 31 LPRA sec. 4912. Véase, además, Gil v. C.R.U.V., 109 DPR 551, 553 (1980). Es decir, por operación de ley, el fiador se coloca en la misma posición que el acreedor. J. Castán Tobeñas, Derecho Civil español, común y floral, 15ta ed. rev., Madrid, Ed. Reus, 1993, T.

4, pág. 794.[12] Así lo reconocimos en <u>Caguas Plumbing v. Continental Const. Corp.</u>, 155 DPR 744, 760 (2001), cuando expresamos que el Art. 1738 de nuestro Código Civil "tipifica un caso de subrogación legal, cuyo ejercicio debe ser tutelado, sancionando la conducta del acreedor que lo impida" (Citas omitidas).[13] En consecuencia, no procede argumentar que cuando un fiador paga, la obligación original se extingue. Por el contrario, y en ausencia de pacto al respecto, por virtud de ley éste se subroga en la misma posición que el acreedor original.

B.

Expuesta la normativa aplicable a la fianza como negocio jurídico, procedemos a auscultar cuáles eran los derechos ostentados por el CRIM y si éstos pueden ser transferidos.

En nuestro ordenamiento jurídico es norma ampliamente conocida que la autoridad del Estado para imponer y cobrar contribuciones le fue delegada a la Asamblea Legislativa. Específicamente, la Constitución de Puerto Rico establece que "[e]l poder del Estado Libre Asociado para imponer y cobrar contribuciones y autorizar su imposición y cobro por los municipios se ejercerá según se disponga por la

---

[12]Para interpretar el Art. 1738 de nuestro Código Civil recurrimos a los comentarios de tratadistas españoles, debido a que éste procede del Art. 1.839 del Código Civil Español.

[13]Véase, además, <u>Roig v. Rodríguez</u>, 16 DPR 207, 211 (1910), donde este Tribunal expresó que el "fiador se subroga por el pago de todos los derechos que el acreedor tenía contra el deudor, según el artículo 1740 [actual artículo 1738] del Código Civil".

Asamblea Legislativa, y nunca será rendido o suspendido". Art. VI, Sec. 2, Const. ELA, LPRA, Tomo 1, ed. 2008, pág. 420. No obstante, según se desprende de esta sección y es reconocido por nuestra jurisprudencia, la Asamblea Legislativa puede delegarle este poder a los municipios. Interior Developers v. Mun. de San Juan, 177 DPR 693, 703 (2009); Café Rico, Inc. v. Mun. de Mayagüez, 155 DPR 548, 553 (2001).

Al crear la Ley Núm. 83-1991, conocida como la Ley de Contribución Municipal sobre la Propiedad de 1991, la Asamblea Legislativa le otorgó a los municipios "todos los poderes, facultades y funciones relacionados con las contribuciones sobre la propiedad mueble e inmueble en Puerto Rico, incluyendo los derechos y rango de créditos y gravámenes preferentes, que hasta la fecha de aprobación de esta Ley [Agosto 30, 1991] ha tenido y ejercido el Secretario de Hacienda". 21 LPRA sec. 5001 n.

A tenor con estos poderes, el Art. 3.30 de la referida ley, 21 LPRA sec. 5080,[14] configura lo que

---

[14]El artículo dispone de la siguiente manera:

Cuando la propiedad inmueble comprende tierras y mejoras, juntamente, los valores en que hubieren sido tasadas las tierras y las mejoras se pondrán por separado. La contribución que se impusiere por el corriente año económico y por los cinco (5) años económicos anteriores sobre cada finca o parcela de propiedad inmueble, e, inclusive, sobre cualesquiera mejoras que en ella existan o que posteriormente se hicieren en la misma, constituirá el primer gravamen sobre dicha propiedad, el cual tendrá prelación sobre cualesquiera otros gravámenes sobre dicha finca o parcela de cualquier naturaleza que fuesen, ya

conocemos como la hipoteca legal tácita a favor del Estado. Es decir, el primer gravamen fiscal sobre toda propiedad mueble e inmueble, cuyo efecto es el mismo que un fallo judicial contra la propiedad. Este gravamen también está contemplado en el Art. 200 de la Ley Hipotecaria, 30 LPRA sec. 2651, el cual establece que:

> [s]e constituye hipoteca legal a favor del Estado Libre Asociado de Puerto Rico, del Centro de Recaudación de Ingresos Municipales del Estado Libre Asociado de Puerto Rico y las correspondientes municipalidades, sobre los bienes inmuebles de los contribuyentes por el importe de las contribuciones territoriales de las cinco (5) últimas anualidades y las corrientes no pagadas de los impuestos que graviten sobre ellos. Esta hipoteca legal tiene carácter de tácita y determina una preferencia a beneficio de sus titulares sobre todo otro acreedor, y sobre el tercer adquirente, aunque haya inscrito sus derechos.

Al igual que en el Derecho español, esta "hipoteca legal tácita es un residuo del antiguo régimen de clandestinidad hipotecaria que en Puerto Rico garantiza el pago de las contribuciones territoriales". Rivera Rivera, op. cit., pág. 511; *véase,* además, Federico Puig Peña, Tratado de Derecho Civil Español, 2da ed., Madrid, Ed. Revista de Derecho Privado, 1974, T.III, V.II, pág. 277. Es decir, "[e]s la única hipoteca que existe por

---

> pesen éstos sobre ella antes o después que el gravamen determinado por dicha contribución. . . Cada notificación de embargo por contribuciones atrasadas, sea sobre bienes inmuebles o sobre bienes muebles, producirá el mismo efecto que un fallo judicial contra toda la propiedad embargada del contribuyente moroso, y todo gravamen que por la presente se crea tendrá la fuerza y efecto de un gravamen debidamente trabado. 21 LPRA sec. 5080.

disposición de ley en la cual no mediará escritura e inscripción registral". Rivera Rivera, op. cit., pág. 511.

El hecho de que su constitución sea automática o *de lege*, se justifica en la medida que se considera suficiente la publicidad que la ley lleva en sí misma. Buxó v. Álvarez & Zavala, Inc., 104 DPR 678, 681-682 (1976). Los tratadistas españoles citan con aprobación que "[p]or tratarse de una hipoteca que grava todos los inmuebles de la Nación, no es posible prácticamente someterla a inscripción para cada uno de ellos; todos los propietarios, y cuantos quieran serlo, saben que debe pagarse la contribución impuesta sobre las fincas y no cabe exigir mayor publicidad". Roca Sastre y otros, op. cit., pág. 228. (Citas omitidas).

Por consiguiente, a pesar de su carácter tácito, ésta es reconocida como "un gravamen, lo que en el lenguaje jurídico significa una verdadera carga real, que pesa sobre los bienes cualquiera que sea su poseedor". Buxó v. Álvarez & Zavala, Inc., *supra,* pág. 681 (Énfasis y citas omitidas); *véase*, además, Sucesión Romero v. Willoughby, 10 DPR 71, 77 (1906).

Asimismo, las leyes citadas son diáfanas en establecer que este gravamen ostenta un derecho preferente, absoluto, mediante el cual se van a cobrar los créditos tributarios de las últimas cinco anualidades y la

corriente que el contribuyente adeude.[15] Esta preferencia impera por encima de todas las acreencias que pueda haber sobre la propiedad, incluyendo aquellas que hayan sido inscritas con anterioridad. Rivera, op. cit., pág. 511. Es decir, "[t]odo acreedor hipotecario al inscribir su hipoteca y todo demandante al anotar su aviso de *lis pendens*, sabe que sus derechos están sujetos al gravamen legal preferente a favor del Tesoro Insular", por lo que sus únicas alternativas son el pagar lo adeudado o utilizar el mecanismo de redención establecido en la ley. Riera v. Registrador, 57 DPR 673, 677-678 (1940).[16]

C.

Cónsono con lo anterior, nos es forzoso concluir que nuestro ordenamiento jurídico contempla la existencia de

---

[15]Esta preferencia también está reconocida en el Art. 1823 del Código Civil de Puerto Rico, 31 LPRA sec. 5193, el cual establece que:

> Con relación a determinados bienes inmuebles y derechos reales del deudor, gozan de preferencia:
>
> (1)Los créditos a favor del Estado Libre Asociado de Puerto Rico, o de la correspondiente municipalidad, sobre los bienes de los contribuyentes, por el importe de las cinco (5) últimas anualidades, y la corriente no pagada, de las contribuciones que graviten sobre ellos.

El Art. 1824 del Código Civil, 31 LPRA sec. 5194, también reconoce esta prelación pero con relación a los demás bienes muebles e inmuebles de un deudor.

[16]Nótese que esta prelación solamente opera en cuanto a las anualidades comprendidas en la hipoteca, no así en torno a las anteriores a éstas. Rivera Rivera, op. cit., pág. 164. *Véase*, además, Federico Puig Peña, Tratado de Derecho Civil Español, 2da ed., Madrid, Ed. Revista de Derecho Privado, 1974, T.III, V.II, págs. 316-317.

una hipoteca legal tácita a favor del Estado, particularmente de las municipalidades. Sin embargo, y pertinente a la controversia de autos, pasamos a evaluar si existe alguna prohibición para que ésta sea cedida.

El crédito hipotecario, al igual que cualquier otra obligación, "puede ser enajenado o cedido a un tercero en todo o en parte, con las formalidades exigidas por ley". Art. 1777 del Código Civil de Puerto Rico, 31 LPRA sec. 5045.[17] En consecuencia, una vez queda constituida la hipoteca, el sujeto activo puede variar en la medida que el acreedor cede o enajena su crédito.

En el caso particular de las obligaciones aseguradas con hipotecas legales, éstas "no podrán cederse sino cuando haya llegado el caso de exigir su importe". Art. 170.1 del Reglamento Hipotecario, 30 LPRA sec. 870.611 (ed. 2010). Ello no implica que el crédito garantizado con hipoteca legal sea inalienable en lo absoluto, sino que tiene esta restricción temporalmente. Roca Sastre y otros, op. cit., T.X, pág. 97. Es decir, hasta tanto no llega el momento de restituir los bienes asegurados con la hipoteca legal, hay una indeterminación en la existencia y la

---

[17] El crédito hipotecario está compuesto por dos elementos, es decir, el crédito y la hipoteca. Esta última es accesoria en tanto garantiza la efectividad del primero. Roca Sastre y otros, op. cit., T.X, pág. 69. Por consiguiente, al transferir el crédito también se transfiere la hipoteca. Ello es cónsono con el Art. 1418 del Código Civil de Puerto Rico, 31 LPRA sec. 3943, el cual establece que "[l]a venta o cesión de un crédito comprende la de todos los derechos accesorios, como la fianza, hipoteca, prenda o privilegio". En otras palabras, no cabe hablar de cesión de crédito hipotecario sin ceder el derecho real de hipoteca.

cuantía del crédito asegurado, lo cual impide que éste pueda cederse. F.J. Jiménez Muñoz, <u>Sobre la cesión de los créditos hipotecarios</u>, 82 Revista Crítica de Derecho Inmobiliario 443, 504 (2006).

Por tanto, no es hasta que éste se convierte en un crédito determinado y exigible que puede ser cedido de acuerdo a los parámetros establecidos en la Ley Hipotecaria. Roca Sastre y otros, <u>op. cit.</u>, T.X, págs. 100-101. Al respecto, la ley establece que ésta tendrá efectos contra terceros desde que se inscribe en el Registro de la Propiedad y el deudor no quedará obligado por más de lo que estaba originalmente. Asimismo, dispone que el "cesionario se subrogará en todos los derechos del cedente". 30 LPRA sec. 2612.[18] Además de esto, la ley exige

---

[18]A tenor con esta disposición, es menester referirnos a la interpretación del Tribunal Supremo de España que este Tribunal adoptó en el contexto de la cesión de créditos:

> tras la cesión del crédito, el nuevo acreedor 'se ha colocado en la *misma situación* que se hallaba el cedente cuando le transfirió dicho crédito'. En su Sentencia de 13 de febrero de 1988, el Tribunal Supremo español resolvió que, más allá del cambio en la persona del acreedor, 'en lo demás la obligación queda inalterable o invariable en su total contenido y características. . .[y] el deudor no responde hacia el cesionario de una obligación distinta, sino de la misma obligación en su total integridad e identidad, en cuyo sentido ya cuida nuestro Código de hablar de novación modificativa'". <u>CSMPR v. Carlo Marrero *et als.*</u>, 182 DPR 411, 421 (2011).

Asimismo, desde <u>Montilla v. Van Syckel</u>, 8 DPR 160, 186-188 (1905), hemos reconocido que la cesión de un crédito hipotecario no puede ser considerada como un simple pago, sino que debe entenderse como una subrogación.

que en la inscripción se haga constar que el deudor ha sido notificado de la cesión. Art. 194 de la Ley Hipotecaria, 30 LPRA sec. 2613. Sin embargo, la omisión de tal requisito no es óbice para impedir la inscripción, sino que el cedente será responsable por los perjuicios que el cesionario pueda sufrir. Íd.

D.

Cónsono con estas disposiciones en donde nuestro ordenamiento jurídico permite la cesión del crédito hipotecario, la Asamblea Legislativa de Puerto Rico aprobó la Ley Núm. 21-1997, conocida como la Ley de Venta de Deudas Contributivas, 21 LPRA sec. 5921, et seq. (Ley Núm. 21-1997). Según se desprende de su Exposición de motivos, con el propósito de proveer mayor liquidez a los gobiernos municipales, a estos últimos se les ha concedido "la autoridad para vender cualquier deuda por contribuciones morosas". Es decir, se estableció un procedimiento administrativo mediante el cual el CRIM puede vender las deudas contributivas.

En el Art. 5(b) de la mencionada ley, 21 LPRA sec. 5923(b), se estableció que esta venta constituirá una cesión del gravamen a favor del comprador, el cual "continuará teniendo carácter de tácito y mantendrá su preferencia a beneficio del comprador y sus cesionarios sobre todo acreedor, incluyendo al Centro, y sobre terceros adquirentes, aunque hayan inscrito sus derechos

en el Registro de la Propiedad".[19] Tan es así, que el comprador tendrá derecho a comenzar el procedimiento de apremio que dispone la misma ley para exigir el crédito de la deuda contributiva transferida. Art. 5 (b) de la Ley Núm. 21-1997, 21 LPRA sec. 5933(b).

Según los tratadistas españoles, mediante los procedimientos de apremio se establecen los mecanismos para que "los bienes inmuebles y los derechos reales inmobiliarios pued[a]n ser objeto de *realización dineraria*". Roca Sastre y otros, op. cit., T.V, pág. 441. Es decir, de esta manera se permite una transmisión jurídico-real que conlleva la transferencia de la finca o del derecho real inmobiliario, produciéndose así un "acto susceptible de *tener acceso* al Registro de la Propiedad". Íd. Asimismo, la Ley Hipotecaria es diáfana en establecer que "[l]os embargos dispuestos en procedimientos administrativos de apremio se regirán por las disposiciones a ellos aplicables". Art. 118 de la Ley Hipotecaria, 30 LPRA sec. 2407.

---

[19]Es pertinente mencionar que cuando se presentó el Segundo Informe sobre el P. del S. 547, el cual eventualmente se convirtió en la Ley Núm. 21-1997, la Asamblea Legislativa consideró la experiencia positiva de varios estados y municipios de los Estados Unidos que establecieron un mecanismo de venta de deudas contributivas. Además, es norma firmemente establecida que el hecho de que la contribución sea a favor del estado no impide que la persona que paga la cantidad adeudada se subrogue en el gravamen del estado. Es decir, se permite la transmisión y que el comprador se subrogue en la misma posición que el estado ostentaba. Right of one who pays taxes for which another is bound, to subrogation to the right of the taxing power, 61 A.L.R. 587 (Supl. 2012).

En el caso de la Ley Núm. 21-1997, el comprador de la deuda contributiva al que se le ha otorgado el certificado de venta podrá presentar una certificación de embargo en el Registro de la Propiedad, la cual se considerará notificación suficiente para comenzar el procedimiento de apremio. Posterior a esto, el comprador podrá solicitar la venta en pública subasta de la propiedad inmueble ante un Tribunal de Primera Instancia. Luego de la adjudicación de la subasta, el dueño del certificado de venta le entregará al comprador un certificado de compra autenticado ante un notario, el cual también constituirá documento suficiente para ser inscrito ante el Registro de la Propiedad. Art. 25 de la Ley Núm. 21-1997, 21 LPRA sec. 5943.

En consecuencia, el legislador no requirió que se otorgara una orden judicial para la inscripción del gravamen preferente transferido. Todo lo contrario, estableció que con la certificación emitida por el CRIM sería suficiente para proceder con tal inscripción.

Al igual que en la referida legislación, la Ley Núm. 83-1991 establece un procedimiento de apremio administrativo mediante el cual el CRIM puede llevar a cabo su gestión recaudatoria. Particularmente, establece que una vez transcurra el término para el pago de las contribuciones sobre una propiedad inmueble, el CRIM podrá presentar una certificación de embargo para su inscripción en el registro de la propiedad que corresponda. Art. 4.06 de la

Ley Núm. 83-1991, 21 LPRA sec. 5106.[20] Así, una vez recibida esta certificación de embargo administrativo, el Registrador tiene el deber de inscribirla y devolverla al CRIM dentro del plazo de diez días. *Véase* Art. 4.07 de la Ley Núm. 83-1991, 21 LPRA sec. 5107.[21]

Después de que esta certificación es presentada ante el Registro de la Propiedad, el CRIM puede proceder a vender la propiedad en pública subasta de acuerdo a la normativa dispuesta en la propia ley. *Véase* Art. 4.08 de la Ley Núm. 83-1991, 21 LPRA sec. 5108. Luego de que la subasta sea adjudicada, el certificado de compra emitido por el CRIM constituirá título suficiente para que el

---

[20]El Art. 4.06, 21 LPRA sec. 5106, específicamente contempla que:

> [l]a mencionada certificación contendrá los siguientes detalles: el nombre del contribuyente moroso, si se conoce; el número de catastro que el Centro de Recaudación le haya asignado al inmueble embargado para fines fiscales; el montante de las contribuciones, penalidades y costas adeudadas por la misma; la descripción de la propiedad o bienes inmuebles embargados; y que el embargo será válido a favor del Centro de Recaudación. La certificación de embargo una vez presentada en el registro será suficiente para notificar al contribuyente e iniciar el procedimiento de apremio.

Esto es cónsono con el mencionado Art. 118 de la Ley Hipotecaria, en el cual se permite la inscripción de los embargos dispuestos en procedimientos administrativos mediante una certificación que comprenda las circunstancias necesarias para la anotación. *Véase* Art. 118 de la Ley Hipotecaria, 30 LPRA sec. 2407.

[21]A tales efectos, desde <u>Riera v. Registrador</u>, 57 DPR 673, 680-681 (1940), esta Curia reconoció que esta certificación constituye un documento auténtico e inscribible de acuerdo a los parámetros establecidos en la Ley Hipotecaria.

comprador pueda proceder a inscribir su derecho en el Registro de la Propiedad. *Véase* Art. 4.13 de la Ley Núm. 83-1991, 21 LPRA sec. 5113.

De esta manera, tanto la Ley Núm.83-1991 como la Ley Núm. 21-1997 contemplan la transferencia del crédito hipotecario preferente que ha sido concedido a favor del CRIM. Asimismo, no requieren una orden judicial para la inscripción de este derecho en el Registro de la Propiedad. Por el contrario, mediante el procedimiento administrativo de apremio que hemos descrito, tanto el CRIM como a quien éste le haya vendido los créditos contributivos morosos pueden recurrir al Registro de la Propiedad mediante una certificación de embargo y solicitar la inscripción de su gravamen.

IV

A la luz de estas disposiciones, procedemos a adjudicar la controversia que tenemos ante nuestra consideración.

Como señalamos en la relación de hechos, tanto en la primera notificación de falta como en la denegatoria del *Escrito de Recalificación* presentado por USIC, la Registradora solamente señaló como falta que por solicitarse una anotación preventiva de embargo, se requería una orden judicial. En ninguna de estas notificaciones se contempló alguna falta adicional. No es hasta que la Registradora se presenta ante esta Curia que,

en contravención del Art. 69 de la Ley Hipotecaria, 30 LPRA sec. 2272, señala varias faltas adicionales.

Ante esto, USIC nos solicita que dejemos de considerar las faltas que fueron presentadas tardíamente. A pesar de que se ha resuelto que es en la nota denegatoria donde se deben incluir todos los motivos legales que de acuerdo a la Registradora impedían la inscripción solicitada, este Tribunal se ha inclinado a promover un uso efectivo de su jurisdicción gubernativa. Es decir, no hemos declinado atender ámbitos de la calificación registral que no estuvieron contemplados en la nota denegatoria original cuando al así hacerlo se aporta a una "solución justa, rápida y económica del problema registral en toda la dimensión que alcanzan los principios de derecho hipotecario aplicables". Housing Inv. Corp. v. Registrador, 110 DPR 490, 504 (1980). *Véase,* además, Grillo v. Registrador, 62 DPR 679, 684 (1943). En consecuencia, procedemos a evaluar las deficiencias señaladas por la Registradora.

En su alegato, la Registradora interpreta que al aprobarse la Ley Núm. 21-1997, el legislador entendió que era necesario consignar expresamente la transferibilidad de la hipoteca legal tácita a favor del CRIM, lo que puso en duda la transferibilidad automática de la misma. Esta conclusión no se sustenta en derecho. Como hemos expuesto, al USIC, como fiadora, satisfacer la deuda contributiva de ingresos municipales sobre la propiedad inmueble en

controversia, por virtud de ley se subrogó en los derechos que el CRIM ostentaba contra la referida finca. Resolvemos que la legislación relacionada a la venta de deudas contributivas transferibles no incide en torno al derecho de USIC al haber satisfecho el pago de la contribución municipal adeudada.

En armonía con el estado de derecho expuesto, el CRIM emitió un documento administrativo titulado *Cesión* mediante el cual consignó expresamente que como resultado de las acciones de USIC como fiadora, le cedía y traspasaba todos los derechos y acciones que éste tenía contra Colonial por concepto de las contribuciones territoriales adeudadas. Es decir, evidenció que le transfirió el crédito preferente que ostentaba por virtud de la legislación vigente en nuestro ordenamiento.

Ante esto, no existe prohibición para que una hipoteca legal sea cedida. Por el contrario, el único requisito que impone nuestro ordenamiento para dicha cesión es que el crédito esté vencido y sea exigible. Ciertamente, esto no está en controversia en el caso de autos.

Por ello, no procedía requerir una orden judicial a tenor con los artículos de la ley hipotecaria que rigen las anotaciones preventivas de embargo en nuestro ordenamiento. Por el contrario, correspondía que la Registradora calificara el documento administrativo que tenía ante su consideración.

Según hemos expuesto, el Art. 42 de la Ley Hipotecaria permite la inscripción mediante documento auténtico expedido por un funcionario competente. En el caso ante nos, al comparecer ante esta Curia, la Registradora señaló que el documento administrativo presentado no cumplía con el principio de especialidad que rige en nuestro ordenamiento y tampoco fue otorgado por un funcionario competente de acuerdo a los confines de la Ley Núm. 83-1991.

La Registradora actuó correctamente al determinar que la Instancia presentada, por sí sola, no constituye un documento apropiado para producir un asiento en el Registro de la Propiedad. Pino Development Corp. v. Registrador, *supra*, pág. 379. Sin embargo, incidió al no considerar que ésta podía complementar el documento administrativo presentado, el cual a todas luces, constituye el título inscribible. Es decir, del cual inmediatamente se desprende el derecho que se pretende inscribir.

Ciertamente, el documento otorgado por el CRIM incluyó expresamente el número de catastro de la finca sobre la cual se pretende inscribir el gravamen y en la Instancia presentada por USIC se incluyó una descripción adecuada del inmueble. Como es sabido, la instancia puede ser utilizada como documento complementario para aclarar derechos. Pino Development Corp. v. Registrador, *supra*, pág. 381. Por tanto, dado que de la Instancia presentada

ante la Registradora surgía la descripción de la finca conforme al principio de especialidad, no procedía denegar la inscripción bajo este supuesto.

De la misma forma, tampoco procedía denegar el asiento por el fundamento de que el documento administrativo no fue alegadamente otorgado por un gestor con competencia para ello. Ciertamente, este tipo de documento debe ser autorizado por un funcionario competente en la materia y que actúe en el ejercicio de sus funciones. Precisamente, esto fue lo que ocurrió en el caso de autos.

El Subdirector Ejecutivo del CRIM otorgó un documento administrativo de cesión mediante el cual certificó el pago y el traspaso de los derechos y acciones que la agencia ostentaba en contra de la propiedad inmueble sujeta al gravamen contributivo. De la disposición citada por la Registradora no surge que el Director Ejecutivo es el único que puede otorgar este tipo de documentos administrativos. Por el contrario, se desprende que el Director Ejecutivo puede delegar cualquiera de sus funciones, deberes y responsabilidades, a funcionarios y empleados del CRIM, con la única excepción de los nombramientos, la autorización de contratos y anticipos de fondos a los municipios. *Véase* Art. 9(d) de la Ley Núm. 83-1991, 21 LPRA sec. 5808 (d). Sin duda, en esta disposición no se contempla la situación que tenemos ante nuestra consideración. El documento autorizado por el

Subdirector Ejecutivo del CRIM sólo certificó el pago de la deuda contributiva adeudada por Colonial y, por consiguiente, el traspaso a USIC de los derechos y acciones que éste ostentaba por disposición de ley.

En consecuencia, la Registradora incidió al requerir una orden judicial para inscribir el gravamen preferente que el CRIM le cedió a USIC por virtud del pago que éste hizo en carácter de fiadora. A tales efectos, el documento administrativo otorgado por el CRIM, acompañado de los documentos complementarios mencionados, cumple con los requerimientos de la Ley Hipotecaria para que la Registradora proceda con la inscripción solicitada.

V

Por los fundamentos que anteceden, corresponde dictar una Sentencia revocando la denegatoria de inscripción emitida por la Registradora de la Propiedad. Por lo tanto, se ordena que se proceda con la inscripción solicitada.

Se dictará Sentencia de conformidad.


                              Luis F. Estrella Martínez
                                   Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| United Surety & Indemnity Company<br><br>    Peticionario<br><br><br>        v.<br><br><br>Marisol Marchand Castro<br>Registradora de la Propiedad<br>Sección Primera de San Juan<br><br>    Recurrido | RG-2014-0002 | |

SENTENCIA

San Juan, Puerto Rico, a 13 de enero de 2015.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se revoca la denegatoria de inscripción emitida por la Registradora de la Propiedad. Por lo tanto, se ordena que se proceda con la inscripción solicitada.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez concurre con el resultado sin opinión escrita.


                        Aida Ileana Oquendo Graulau
                        Secretaria del Tribunal Supremo