Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel VIII

| | | |
|---|---|---|
| JUNTA DE PLANIFICACIÓN DE PUERTO RICO<br>          Apelante<br><br>          v.<br><br>WILFREDO PÉREZ ROMÁN; su cónyuge de nombre desconocido y la sociedad de bienes gananciales compuesta por ambos<br>          Apelados<br><br>JOSÉ M. REYES; su cónyuge de nombre desconocido y la sociedad legal de bienes gananciales compuesta por ambos<br>          Parte con interés<br><br>PERÓN CONSTRUCTION, INC.<br>          Parte con interés | KLAN202401049 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de Arecibo<br><br>Caso Núm. AR2023CV02410<br><br>Sobre:<br>*Injuction* Estatutario contemplado en la Ley Núm. 75 de 24 de junio 1975 según enmendada y las disposiciones del artículo 14.1 de la Ley Núm. 161 de 1 de diciembre de 2009 según enmendada |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Adames Soto, Juez Ponente

## **SENTENCIA**

En San Juan, Puerto Rico, a 24 de junio de 2025.

Comparece la Junta de Planificación de Puerto Rico (Junta de Planificación o parte apelante) mediante recurso de apelación. Solicita que revoquemos la *Sentencia* emitida el 26 de septiembre de 2024, notificada al día siguiente, por el Tribunal de Primera Instancia, Sala Superior de Arecibo (TPI). Mediante el referido dictamen el foro primario declaró *Con Lugar* dos mociones de desestimación presentadas por la parte apelada de epígrafe, y, en consecuencia, desestimó la *Demanda de Injunction Estatutario Preliminar y Permanente* (*Demanda*) interpuesta por la Junta de Planificación.

Por los fundamentos que expondremos, procede *revocar* la *Sentencia* apelada.

## I. Resumen del tracto procesal

El 29 de diciembre de 2023 la Junta de Planificación presentó una *Demanda de Injunction Estatutario Preliminar y Permanente.* En ella adujo que, según reflejó una investigación administrativa, el Señor Wilfredo Pérez Román (señor Pérez Román), y el señor José M. Reyes (señor Reyes), (en conjunto, los querellados), se encontraban realizando una construcción residencial unifamilar localizada en el Municipio de Hatillo, sin el permiso de construcción requerido por ley. Particularmente, alegó que el permiso núm. 2013-195747-PCO-89233 que había sido expedido a favor del señor Reyes expiró el 14 de mayo de 2016, al no completarse la obra dentro del término autorizado. Por consiguiente, adujo que radicó la *Querella* 2023-SRQ-013013 el 8 de marzo de 2023, junto con una *Orden de Cese y Desista* contra los señores Perez Román y Reyes, hasta tanto la obra se legalizara o se eliminara la violación al permiso de construcción.

En la misma *Demanda,* la Junta de Planificación continuó arguyendo que el 16 de junio de 2023 les notificó a los querellados un escrito intitulado *Notificación de Hallazgo(s) y Orden de Mostrar Causa* (*Notificación*), con las determinaciones de hechos y conclusiones de derecho que arrojó la investigación administrativa. A su vez, sostuvo que les otorgó un término de veinte (20) días para que mostraran causa por la cual no se les debía imponer la multa de $4,112.64. De no comparecer, la Junta de Planificación les advirtió que acudiría al Tribunal de Primera Instancia para solicitar el cobro de la multa, la paralización y/o demolición de la obra y los honorarios de abogados.

Por último, la Junta de Planificación alegó que la *Notificación de Hallazgos y Orden de Mostrar Causa* aludida advino final y firme, pues los querellados no respondieron ni presentaron un escrito presentando sus defensas. A raíz de ello, esta solicitó al foro primario que interviniera para asegurar el cese de la obra objeto de la Orden Núm. 00551-OCD-2023-SRQ-013013 construida ilegalmente; que se les ordenara a los querellados el pago

de la multa de $4,112.64 más los intereses legales; y las costas y honorarios de abogados correspondientes.

Tras varios incidentes procesales, el 26 de marzo de 2024, la parte apelante presentó una *Moción Enmienda a Demanda*. En esta ocasión, adujo que advino en conocimiento de que los registros del CRIM fueron modificados posterior a la presentación de la *Demanda* original para reflejar que Perón Construction Inc. (Perón Inc.), figuraba como dueña de la propiedad objeto del presente caso. Como resultado, solicitó incluir como parte demandada a Perón Inc., así como el desistimiento de la causa de acción contra el codemandado José M. Reyes.

Mediante *Orden* de 1 de abril de 2024, el TPI autorizó la enmienda a las alegaciones. En esa misma fecha, el foro de instancia emitió y notificó una *Sentencia Parcial* decretando el archivo, sin perjuicio, de la causa de acción contra José M. Reyes, su cónyuge y la Sociedad Legal de Gananciales. Como resultado de las nuevas enmiendas, se emplazó a Perón Inc. por conducto de su agente residente, el señor Pérez Román.

El 17 de mayo de 2024 el señor Pérez Román y Perón inc., (en conjunto, parte apelada), contestaron la *Demanda*. En esta, adujeron que la *Demanda* dejaba de exponer una reclamación que justificara la concesión de un remedio porque la obra nunca fue ilegal, pues siempre contó con un permiso de construcción.

El 19 de mayo de 2024, la Junta presentó una *Moción Informativa* notificando la presentación de un *Informe de Investigación Enmendado* para incluir a Perón Inc. como parte querellada.

Luego, el 26 de julio de 2024, Perón Inc. y el señor Pérez presentaron una primera *Moción de Desestimación*. En esta arguyeron que el foro primario no podía conceder un *injunction* porque al momento de presentarse la *Demanda* se había expedido el permiso de construcción 2024-556113-PUS-302555 a favor de Perón Inc., además de que la obra ya estaba terminada.

El mes siguiente, la parte apelada presentó una segunda *Moción de Desestimación.* En esta esgrimió que, a la fecha de la *Notificación de Hallazgos,* Perón Inc. era la dueña del predio donde se ejecutó la obra. Por lo tanto, adujo que debía desestimarse la *Demanda* por haberse infringido su derecho al debido proceso de ley al no haberle sido notificados los hallazgos de la investigación, lo cual le privó de una oportunidad adecuada de defenderse.

En respuesta, el 16 de agosto de 2024, la Junta de Planificación presentó su *Oposición a Moción de Desestimación.* Esgrimió que no debía desestimarse la *Demanda* por razón de que el cambio de dueño en el CRIM fue realizado en una fecha posterior al momento de iniciarse la acción judicial. Añadió que la parte apelante no había obtenido los permisos de uso y/o construcciones correspondientes al 16 de junio de 2023, fecha en que se notificó el escrito intitulado *Notificación de Hallazgos.* También, esbozó que Perón Inc. tuvo la oportunidad de defenderse en el proceso administrativo, toda vez que el escrito aludido se le notificó a través de su agente residente, el señor Pérez Román.

En vista de lo anterior, el TPI emitió una *Sentencia* el 27 de septiembre de 2024, donde declaró *Con Lugar* las referidas mociones de desestimación, y le impuso a la Junta de Planificación el pago de $1,500 en honorarios de abogados. Fundamentó su determinación en la falta de notificación adecuada a Perón Inc., lo que supuso infracción al debido proceso de ley. Asimismo, manifestó que la Junta de Planificación pudo haber inspeccionado el Registro de la Propiedad para verificar quién era el verdadero dueño de la propiedad. Añadió que la enmienda a la *Demanda* para incluir a Perón Inc. no subsanó los errores procesales a nivel administrativo. Por tanto, entendió que se tenían que agotar los remedios administrativos, habida cuenta de que la notificación al señor Pérez Román en su carácter personal no constituyó una debida notificación a la corporación.

Inconforme con la determinación del foro primario, la Junta de Planificación presentó una *Moción de Reconsideración,* que fue declarada *No Ha Lugar.*

Es así como la Junta de Planificación acude ante nosotros, mediante la presentación de un recurso de apelación, esgrimiendo la comisión de los siguientes errores por el foro apelado:

<u>PRIMER ERROR</u>: ERRÓ EL TPI AL DETERMINAR QUE LA APELANTE DEBIÓ CORROBORAR EN EL REGISTRO DE LA PROPIEDAD QUIÉN ERA EL DUEÑO DE LA PROPIEDAD QUERELLADA.

<u>SEGUNDO ERROR</u>: ERRÓ EL TPI AL DETERMINAR QUE EL SR. PÉREZ NO TENÍA NADA QUE VER CON LA PROPIEDAD QUERELLADA Y POR CONSIGUIENTE DESESTIMAR LA DEMANDA.

<u>TERCER ERROR</u>: ERRÓ EL TPI AL CONCLUIR QUE A PERON NO SE LE SALVAGUARDÓ EL DEBIDO PROCESO DE LEY[.]

<u>CUARTO ERROR</u>: ERRÓ EL TPI AL DETERMINAR QUE PROCEDÍA EL PAGO DE HONORARIOS DE ABOGADO, MÁS LAS COSTAS Y GASTOS A FAVOR DE LA PARTE APELADA.

## II. Derecho aplicable

### *A. Desestimación bajo la Regla 10.2 de Procedimiento Civil*

La moción de desestimación al amparo de la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, Regla 10.2, es aquella que formula el demandado para solicitar que se desestime la demanda presentada en su contra. *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 428 (2008). Esta regla dispone que la parte demandada puede presentar una moción de desestimación en la que esgrima las siguientes defensas: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) **dejar de exponer una reclamación que justifique la concesión de un remedio**; y (6) dejar de acumular una parte indispensable. (Énfasis provisto). Regla 10.2 de Procedimiento Civil, *supra*; *Costas Elena v. Magic Sport Culinary Corp.*, 213 DPR 523, 533 (2024); *López García v López García,* 200

DPR 50, 69 (2018); *González Méndez v. Acción Social de Puerto Rico,* 196 DPR 213, 234*; Asoc. Fotoperiodistas v. Rivera Schatz,* 180 DPR 920, 935 (2011).

Al evaluar una petición presentada al amparo de la Regla 10.2, *supra,* el foro primario tiene que tomar como ciertos todos los hechos bien alegados en la demanda, y considerarlos de la manera más favorable a la parte demandante. *Colón Rivera et al. v. ELA*, 189 DPR 1033, 1049 (2013); *El Día, Inc. v. Mun. de Guaynabo*, 187 DPR 811, 821 (2013). Así, para que una moción de desestimación pueda prosperar, se tiene que demostrar de forma certera que el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que se pudiere probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor. *Cobra Acquisitions, LLC v. Municipio de Yabucoa*, 210 DPR 384, 396 (2022); *López García v. López García,* supra, pág. 70*; Rivera Sanfeliz v. Jta. Dir. FirstBanck*, 193 DPR 38, 49 (2015). El tribunal deberá tener en cuenta que, conforme lo dispone la Regla 6.1 de Procedimiento Civil, 32 LPRA Ap. V, Regla 6.1, la demanda solo tiene que contener una relación sucinta y sencilla de la reclamación demostrativas de que el peticionario tiene derecho a un remedio. *Torres, Torres v. Torres et al.*, 179 DPR 481, 501 (2010).

Ahora bien, ello solo aplicará a aquellos hechos alegados de forma clara y concluyente, que de su faz no den margen a dudas. *Cobra Acquisitions, LLC v. Municipio de Yabucoa*, supra*; Rivera Sanfeliz v. Jta. Dir. FirstBanck*, supra. A tenor, no se presumen ciertos hechos que no estén bien alegados, ni las alegaciones o conclusiones de derecho. *Molina v. Supermercado Amigo, Inc.*, 119 DPR 330, 338 (1987). El TPI debe determinar si, a base de los hechos que aceptó como ciertos, *la demanda establece una reclamación plausible que justifique la concesión de un remedio. Costas Elena v. Magic Sport Culinary Corp.,* supra, citando a R. Hernández Colón, *Derecho Procesal Civil*, 6ta ed., San Juan, LexisNexis, 2017, pág. 307. Por consiguiente, una demanda puede ser desestimada si claramente carece de méritos. *Costas Elena v. Magic Sport Culinary Corp.,* supra, pág. 534; *Reyes*

*v. Sucn. Sánchez Soto*, 98 DPR 305, 308 (1970). Esto puede manifestarse en la inexistencia de una ley que sostenga una reclamación, en la ausencia de hechos suficientes para que la reclamación sea válida, o en la alegación de algún hecho que necesariamente destruya la reclamación. *Íd.*

### B. El Debido Proceso de Ley y las Multas Administrativas

La Constitución del Estado Libre Asociado de Puerto Rico reconoce como derecho fundamental del ser humano el derecho a la vida, la libertad y el disfrute de la propiedad. Art. II, Sec. 7. En consecuencia, también dispone que ninguna persona será privada de su libertad o propiedad sin un debido proceso de ley. *Íd.* Similar reconocimiento se encuentra en las Enmiendas V y XIV de la Constitución de los Estados Unidos.

El debido proceso de ley tiene dos manifestaciones: la sustantiva y la procesal. En su vertiente procesal posibilita que el Estado, al ejercer su poder contra una persona, le garantice el derecho a un procedimiento imparcial y justo, en donde el individuo pueda cuestionar las razones y legalidad de la acción. *Almonte et al. v. Brito*, 156 DPR 475, 481 (2002); *Rivera Rodríguez & Co. v. Lee Stowell*, 133 DPR 881, 888 (1993).

Para satisfacer las exigencias del debido proceso de ley, en dicha vertiente se deben cumplir los siguientes requisitos: (1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (5) derecho a contrainterrogar testigos y examinar evidencia presentada en su contra; (6) tener asistencia de abogado, y (7) que la decisión se base en el récord. *Íd.*, pág. 889.

### C. El Emplazamiento a una Corporación

i.

El emplazamiento es el mecanismo procesal mediante el cual se le notifica al demandado de la reclamación en su contra y el tribunal adquiere jurisdicción sobre su persona para resolver el asunto. *Global v. Salaam*, 164 DPR 474, 480 (2005); *Quiñones Román v. Cía. ABC*, 152 DPR 367, 374 (2000); *First Bank of P.R. v. Inmob. Nac., Inc.,* 144 DPR 901, 913

(1998). Desde ese momento, dicha parte quedará obligado por el dictamen que se emita eventualmente. *Global v. Salaam*, supra; *Márquez v. Barreto*, 143 DPR 137, 142 (1997). El propósito principal de este mecanismo procesal es notificar a la parte demandada de forma sucinta y sencilla que se ha presentado una acción en su contra, garantizándole la oportunidad de comparecer en el juicio, ser oído y presentar prueba a su favor. *Banco Popular v. SLG Negrón*, 164 DPR 855, 863 (2005).

Este acto procesal es regulado por la Regla 4 de Procedimiento Civil de Puerto Rico, 32 LPRA Ap. V, Regla 4. En particular, la Regla 4.4 (a) de Procedimiento Civil, 32 LPRA Ap. V, Regla 4.4(a), dispone la forma en que se diligenciará el emplazamiento a una corporación:

(a) A una **corporación,** compañía, sociedad, asociación o cualquier otra persona jurídica, **entregando copia del emplazamiento y de la demanda a un(a) oficial, gerente administrativo(a), agente general o a cualquier otro(a) agente autorizado(a) por nombramiento o designado(a) por ley para recibir emplazamientos.** (Énfasis provisto).

Por su parte, el Artículo 12.01, de la Ley General de Corporaciones de 2009, 14 LPRA sec. 3781, establece disposiciones específicas relacionadas al emplazamiento de una corporación. En ese sentido, el referido estatuto dispone lo siguiente:

a) "Se emplazará a cualquier corporación organizada en el Estado Libre Asociado entregando personalmente una copia del emplazamiento a cualquier oficial o director de la corporación en el Estado Libre Asociado, o al agente inscrito de la corporación en el Estado Libre Asociado, o dejándola en el domicilio o residencia habitual de cualquier oficial, director o agente inscrito (si el agente inscrito es un individuo) en el Estado Libre Asociado, o en la oficina designada u otra sede de negocios de la corporación en el Estado Libre Asociado. [...] El emplazamiento diligenciado mediante la entrega de una copia en el domicilio o residencia habitual de cualquier oficial, director o agente inscrito, o en la oficina designada u otra sede de negocios de la corporación en el Estado Libre Asociado, para ser eficaz, deberá dejarse en presencia de un adulto por lo menos seis (6) días previos a la fecha del señalamiento del procedimiento judicial y el emplazador, informará claramente, la forma de diligenciamiento en la notificación de la misma. Si la comparecencia ha de ser inmediata, el emplazamiento deberá entregarse en persona al oficial, director o agente residente.

A tenor con lo anterior, para que un emplazamiento dirigido a una corporación doméstica sea eficaz, la ¨persona adulta¨ en presencia de quien

se deje el emplazamiento debe tener una posición o función suficiente con cierto grado de autoridad o capacidad para representar a la corporación, de manera que se pueda presumir que remitirá el emplazamiento dirigido a la entidad. *Rivera Torres v. Díaz López*, 207 DPR 636, 660 (2021).

ii.

Las corporaciones, aunque sean entes con personalidad jurídica propia, son criaturas creadas por ficción de ley, por lo que solo pueden actuar por medio de agentes, que son personas naturales. *Gasolinas PR v. Registrador*, 155 DPR 652, 665-666 (2001). Por medio de sus oficiales, las corporaciones pueden obligarse: (1) por virtud de la autoridad conferida por los estatutos corporativos; (2) por autorización expresa mediante una resolución corporativa a esos efectos; (3) por autorización implícita; (4) por autoridad aparente; o (5) por virtud de la facultad inherente a su cargo. *Íd.*, pág. 666.

En torno a este particular, el Profesor Díaz Olivo ha puntualizado lo siguiente:

> la determinación de si un funcionario o un oficial corporativo posee la facultad de vincular y actuar a nombre de la corporación no depende necesariamente de su título, sino de la autoridad que se le confirió o que aparentemente se le confirió en la estructura corporativa. Al analizar problemas de esta naturaleza, la jurisprudencia norteamericana ha hecho uso de las normas del contrato de agencia o mandato, equivalente a la figura del mandato en el derecho civilista. Así, pues, se ha reconocido que un funcionario corporativo puede vincular y obligar a la corporación si posee autoridad real para ello. La autoridad real es aquélla que el principal dé a entender al agente que posee.
>
> La autoridad real puede ser expresa o implícita. La expresa es la que confiere específicamente al oficial en los estatutos o en las resoluciones de la junta de directores. [...]
>
> La autoridad implícita es la que se infiere de las palabras y la conducta de la corporación y del funcionario, dentro del contexto de la relación entre las partes. [...]
>
> La jurisprudencia también ha reconocido que un oficial puede vincular a la corporación cuando tiene autoridad aparente. Contrario al caso de la autoridad implícita, la autoridad aparente sólo existe o se reconoce con relación a terceras personas; esto es, la autoridad que personas ajenas a la corporación pueden razonablemente entender que un oficial corporativo posee en vista de la conducta y el desempeño de la corporación. [...]
>
> Además, se ha reconocido que un agente puede vincular a una corporación si cuenta con autoridad inherente para ello. Esta es la

autoridad que de ordinario posee una persona por la posición o función que desempeña para su principal. [...]

Finalmente, cualquier actuación de un oficial o un funcionario corporativo puede vincular a la corporación, aun si no posee autoridad real, aparente o inherente. El vínculo sucede cuando: la actuación es ratificada por la junta de directores de la corporación; la corporación retiene para sí los beneficios del contrato otorgado por el agente no autorizado, o cuando la corporación está impedida de negar la autoridad del oficial. C.E. Díaz Olivo, *Corporaciones, Tratado sobre Derecho Corporativo*, Hato Rey, Ed. Publicaciones Puertorriqueñas, 2016, 195-196. (Notas al calce omitidas).

### D. Ley Núm. 161-2009 y el Reglamento Conjunto 2023

#### i. Sistema Unificado de Información

La Ley para la Reforma del Proceso de Permisos de Puerto Rico, Ley Núm. 161-2009, según enmendada, Ley Núm. 161-2009, 23 LPRA sec. 9011 *et seq.*, fue aprobada con el fin de proveer el marco legal administrativo integrado del Gobierno de Puerto Rico para regir los procesos de solicitud, evaluación, concesión y denegación de permisos de uso, construcción y desarrollo de terrenos en Puerto Rico. *Horizon v. Jta Revisora, RA Holdings*, 191 DPR 228, 236 (2014). A esos fines, se creó el Sistema Unificado de Información (SUI) computarizado para tramitar y evaluar las solicitudes que se presenten con relación al desarrollo, construcción, uso de propiedades en Puerto Rico tales como licencias, permisos, inspecciones, querellas, certificaciones, consultas, autorizaciones, y cualquier trámite necesario para la operación o que incida sobre la operación de un negocio en Puerto Rico. Regla 2.1.2 del Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios, Núm. 9473, de 16 de junio de 2023, (Reglamento Conjunto).

Sobre el uso y manejo del SUI, el Art. 2.7 de la Ley Núm. 161-2009, 23 LPRA sec. 9012f, dispone lo que sigue:

[l]a Oficina de Gerencia de Permisos contará con un sistema unificado de información computadorizado mediante el cual:

(a) se tramitarán y evaluarán las solicitudes que se presenten relacionadas al desarrollo, construcción, uso de propiedades en Puerto Rico tales como licencias, permisos, inspecciones, querellas, certificaciones, consultas, autorizaciones y cualquier trámite necesario para la operación o que incida de alguna forma en la operación de un negocio en Puerto Rico. De igual modo, toda solicitud de licencia, permiso, inspección, presentación de querellas,

certificaciones, consultas, autorizaciones y cualquier otro trámite necesario para la operación de un negocio a ser evaluadas por la Junta de Planificación, los Municipios Autónomos con Jerarquía de la I a la III, los Profesionales Autorizados e Inspectores Autorizados, las Entidades Gubernamentales Concernidas o cualquier otra instrumentalidad pública que lleve a cabo una función que incida directa o indirectamente en la operación de un negocio en Puerto Rico deberá ser presentada, tramitada y evaluada usándose el Sistema Unificado de Información. En aquellas solicitudes para operar negocios o actividades que contengan más de una actividad o uso, el sistema unificado de información permitirá la otorgación de los permisos y autorizaciones pertinentes para operar un negocio o actividad para aquellos usos y actividades con las que ya cuenta con todos los requerimientos y no obstaculizará dicha otorgación hasta que se obtengan todas las licencias o certificaciones de las restantes solicitudes;

(b) el Sistema Unificado de Información podrá utilizar, sin costo alguno, el contenido de todas las bases de datos sean estas de la Oficina de Gerencia de Permisos, la Junta de Planificación y los Municipios Autónomos para la tramitación de las solicitudes, así como cualquier otra base de datos del Gobierno de Puerto Rico y sus instrumentalidades, que contengan información pertinente y útil en el proceso de evaluación de dichas solicitudes. La Oficina de Gerencia de Permisos, a través del Sistema Unificado de Información, garantizará la interconexión y disponibilidad de estos documentos en todas las agencias pertinentes o requeridas en este proceso a fin de que, de igual manera, reciban avisos automáticos sobre las solicitudes de licencias, certificaciones, renovaciones o autorizaciones que competen a la pericia y conocimiento de su agencia; [...]

Por su parte, el inciso (c) de la Regla 2.1.2 del Reglamento Conjunto, *supra*, establece lo siguiente:

[e]l SUI dará acceso a las Entidades Gubernamentales Concernidas y a los Municipios Autónomos con Jerarquía de la I a la III para la tramitación de las solicitudes, así como cualquier otra base de datos del Gobierno de Puerto Rico y sus instrumentalidades, que contengan información pertinente y útil en el proceso de evaluación de dichas solicitudes.

### ii. Naturaleza in rem de las multas sobre la propiedad inmueble

El Capítulo 11.4 del Reglamento Conjunto, *supra*, rige lo concerniente a la imposición de multas administrativas. En lo pertinente, el inciso (a) de la Sección 11.4.1.1 de la Regla 11.4.1 del Reglamento Conjunto, *supra,* dispone que, si de la investigación realizada se concluye que las alegaciones de la querella son ciertas, la Junta de Planificación procederá a expedir una multa administrativa que no exceda de $50,000.00 por cada infracción. Por su parte, el inciso (e) de la Regla expone que las multas constituirán un gravamen real sobre el título de la propiedad involucrada en la violación o violaciones.

En *United Surety v. Registradora,* 192 DPR 187, 205-206 (2015), nuestro Tribunal Supremo dispuso lo siguiente:

> La hipoteca legal tácita es la única hipoteca que existe por disposición de ley, en la cual no mediará escritura e inscripción registral. El hecho de que su constitución sea automática o *de lege,* se justifica en la medida que se considera suficiente la publicidad que la ley lleva en sí misma. A pesar de su carácter tácito, esta se reconoce como un gravamen, lo que en el lenguaje jurídico significa una verdadera carga real, que pesa sobre los bienes cualquiera que sea su poseedor. (Citas omitidas).

Sobre la hipoteca legal tácita, el Artículo 55 de la Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico, Ley 210-2015, según enmendada, 30 LPRA sec. 6082, precisa lo siguiente:

> [l]a hipoteca legal es la que se constituye a favor del Centro de Recaudación de Ingresos Municipales de Puerto Rico y los municipios, sobre los bienes inmuebles de los contribuyentes por el importe de las contribuciones territoriales de las cinco (5) últimas anualidades y las corrientes no pagadas de los impuestos que graviten sobre ellos y por el importe de las multas y deudas de mitigación por concepto de estorbos públicos con el mismo término de tiempo o más o contra cuyo adeudo el Municipio haya obtenido una sentencia. Esta hipoteca legal tiene carácter de tácita y determina una preferencia a beneficio de sus titulares sobre todo otro acreedor, y sobre el tercer adquirente, aunque haya inscrito sus derechos. **Estarán en el mismo rango preferencial propuesto, las hipotecas tacitas a favor de** los municipios, del Gobierno Federal y **del Gobierno de Puerto Rico, incluyendo a todas las agencias,** organismos, departamentos, así como a las instrumentalidades y corporaciones públicas del Gobierno de Puerto Rico **por concepto de multas** y mitigación por estorbo público a cualquier hipoteca, gravamen o condiciones restrictivas, **sobre los bienes inmuebles de los contribuyentes.** (Énfasis provisto).

### iii. Naturaleza in personam del injunction

La Ley Núm. 161-2009, *supra,* le reconoce a la Junta de Planificación la facultad de recurrir a los recursos extraordinarios para solicitar la revocación de permisos, paralización de obras o usos no autorizados, presentación de querellas, etc. En ese sentido, el Artículo 14.1 de la Ley Núm. 161-2009, 23 LPRA sec. 9024, dispone lo siguiente:

> [l]a Junta de Planificación, un Municipio Autónomo con Jerarquía de la I a la III, una Entidad Gubernamental Concernida que haya determinado que sus leyes y reglamentos han sido violados, o cualquier persona privada, natural o jurídica, que tenga un interés propietario o personal que podría verse adversamente afectado, podrá presentar una acción de *injunction, mandamus,* sentencia declaratoria, o cualquier otra acción adecuada para solicitar: 1) la revocación de una determinación final otorgada, cuya solicitud se haya hecho utilizando información incorrecta o falsa; 2) la paralización de una obra iniciada sin contar con las autorizaciones y permisos correspondientes, o incumpliendo con las disposiciones y condiciones del permiso otorgado; 3) la paralización de un uso no autorizado o de una construcción autorizada mediante permiso, para

la cual no se hayan realizado los pagos correspondientes a aranceles, pólizas, arbitrios y sellos; 4) la demolición de obras construidas, que al momento de la presentación del recurso y al momento de adjudicar el mismo no cuenten con permiso de construcción, ya sea porque nunca se obtuvo o porque el mismo ha sido revocado.

En *Díaz Vázquez v. Colón Peña*, 2024 TSPR 113 el Tribunal Supremo de Puerto Rico, interpretó el Artículo 14.1 de la Ley Núm. 161-2009, *Íd.* Resolvió que la parte contra la que se presenta un recurso de <u>injunction</u> estatutario bajo el mencionado artículo no tiene que ser obligatoriamente el dueño titular en el inmueble en que se originan las acciones que motivan la reclamación judicial. Fundamentó su determinación en que los <u>injunctions</u> constituyen un remedio *in personam*, debido a que la sentencia o el mandamiento que se expida va dirigido contra la persona demandada o contra quien se dirija la acción y no contra sus bienes, ni en contra de la cuestión que es objeto del recurso extraordinario. *Íd.*

### E. Honorarios de Abogados contra el Estado

Es sabido que la Regla 44.1(d) de Procedimiento Civil, 32 LPRA Ap. V, Regla 44.1(d), les concede a los tribunales la facultad de imponer el pago de una suma por concepto de honorarios de abogado cuando una parte o su abogado han actuado con temeridad o frivolidad durante el proceso litigioso. El propósito principal de esta regla es establecer una penalidad a un litigante perdidoso que, por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente a asumir molestias, gastos, trabajo e inconveniencias de un pleito, afectando, a su vez, el buen funcionamiento y la administración de la justicia. *Vega v. Luna Torres*, 126 DPR 370, 375 (1990). Por lo anterior, si en la discreción del Tribunal de Primera Instancia se determina que hubo temeridad, a tenor con la citada Regla, es imperativo imponer honorarios. *PR Oil v. Dayco*, 164 DPR 486, 511 (2005). De otra parte, solo se intervendrá con dicha determinación si media un abuso de discreción. *Andamios de P.R. v. Newport Bonding*, 179 DPR 503, 520 (2010).

Por su parte, Regla 34.6 de Procedimiento Civil, 32 LPRA Ap. V, Regla 34.6, exige que se celebre una vista previa a la imposición de gastos y honorarios de abogado al Estado Libre Asociado.

En lo pertinente a la imposición de honorarios de abogados cuando se presenta una solicitud de recursos extraordinarios ante el Tribunal de Primera Instancia con el fin de solicitar la revocación de un permiso, la paralización de una obra, la demolición de obras, entre otros remedios, el Artículo 14.1 de la Ley Núm. 161-2009, 23 LPRA sec. 9024, dispone:

> [e]l Tribunal impondrá honorarios de abogados contra la parte que presenta el recurso bajo este **Artículo si su petición resulta carente de mérito y razonabilidad o se presenta con el fin de paralizar una obra o permiso sin fundamento en ley.** Los honorarios de abogados bajo este Artículo será una suma igual a los honorarios que las otras partes asumieron para oponerse a la petición judicial. En el caso que el Tribunal entienda que no es aplicable la presente imposición de honorarios de abogados, tendrá que así explicarlo en su dictamen con los fundamentos para ello. *Íd.*; *Díaz Vázquez v. Colón Peña*, supra.

## III. Aplicación del Derecho a los hechos

a.

Los errores señalados por la parte apelante son susceptibles de discusión conjunta, así obraremos. En síntesis, a través de estos se impugna la determinación del TPI de acoger la moción de desestimación de los recurridos, favoreciendo la teoría legal que propuso intervino una falta de notificación adecuada a Perón Inc. de los hallazgos esgrimidos por la Junta de Planificación, lesionando el debido proceso de ley. Se refuta en particular el razonamiento del foro primario según el cual, la parte apelante pudo haber inspeccionado el Registro de la Propiedad Inmobiliaria (Registro de la Propiedad) para verificar quién era el verdadero dueño de la propiedad, en lugar de descansar en la palabra del agente residente de Perón Inc., el señor Pérez Román, quien, presuntamente, no tenía nada que ver con la propiedad objeto del procedimiento administrativo.

En lo específico, la Junta de Planificación sostiene, primeramente, que ni la Ley Núm. 161-2009, *supra*, ni el Reglamento Conjunto, *supra*, le imponen un deber de realizar la referida búsqueda de información en el

Registro de la Propiedad para identificar a los dueños del inmueble, solo aludiendo para tal fin al Sistema Unificado de Información (SUI). Además, arguyó que el Registro de la Propiedad no es confiable porque la inscripción de derechos es voluntaria.

Asimismo, la Junta de Planificación levanta la doctrina de actos propios para aducir que el señor Pérez Román, agente residente de Perón Inc., le indujo a error al identificarse como dueño y actuar como tal en todo momento. A su vez, esbozó que, a tenor con *Díaz Vázquez v. Colón Peña*, supra, el *injunction* es *in personam*, lo cual implica que procede contra este al encontrarse en dominio, posesión y/o uso del predio.

También, argumentó que, una vez advino en conocimiento de que los registros del CRIM fueron actualizados para incluir a Perón Inc. como titular de la propiedad, solicitó la enmienda a la demanda oportunamente, el TPI la autorizó, y luego fue emplazada a través del señor Pérez Román. Por consiguiente, esgrimió que se le salvaguardó el debido proceso de ley a Perón Inc., al ser emplazado e incluido como parte en la *Demanda*. Entonces, a tono con la Regla 13.1 de Procedimiento Civil, 32 LPRA Ap. V, Regla 13.1, si la *Demanda* es susceptible de ser enmendada, no procede su desestimación.

En contraste, el señor Pérez Román y Perón Inc. arguyen que la corporación aludida es una entidad distinta y separada de su agente residente, el señor Pérez Román. Por lo cual, el TPI no podía conceder el remedio de un cese y desista bajo el fundamento de falta de permiso, cuando el 19 de abril de 2024 se emitió el permiso de uso núm. 2024-556113-PUS-302555. Consecuentemente, restaba el pago de la multa, pero al no ser notificado a nivel administrativo, el foro de instancia tampoco podía conceder dicho remedio.

b.

Planteadas de esta forma las respectivas posturas de las partes, iniciamos por reconocer sin ambages que el debido proceso de ley exige que una parte tenga conocimiento adecuado y oportunidad de ser oída antes de

la imposición de sanciones. Este derecho, sin duda, es extensible a las corporaciones.

Sin embargo, desde *Sabalier Sabalier v. Iglesias Pantín*, 34 DPR 352 (1925), nuestro Tribunal Supremo ha reconocido que por ser una corporación un organismo artificial e intangible, existente solamente en correspondencia a la ley, presupone la existencia de una persona natural, por lo que todos sus actos han de celebrarse en representación suya por vía de sus agentes. *Gasolinas PR v. Registrador,* supra. Consecuentemente, es a través de sus oficiales que, por lo general, una corporación se obliga, ya sea en virtud de la autoridad que los estatutos corporativos le hayan conferido; por autorización expresa otorgada mediante resolución corporativa; por autorización implícita; por autoridad aparente; o en casos muy limitados, por virtud de cierta facultad inherente a su cargo. *Gasolinas PR v. Registrador*, supra.

Cónsono con lo anterior, destacamos que, del expediente ante nos surge una *Resolución* corporativa de Perón Construction, Inc., del 17 de septiembre de 2021 **que autoriza al Sr. Wilfredo Pérez Román a actuar en representación de la corporación aludida**.[1] Además, a este se le autoriza a *realizar cualquier gestión de cualquier naturaleza y/o a firmar cualquier documento público o privado, ante cualquier entidad legal* ***o gubernamental****, ya sea estatal o federal, privada que sea de beneficio para la Corporación*.[2] En armonía con ello, el señor Pérez Román se encuentra registrado como agente residente de Perón Inc. en el Departamento de Estado de Puerto Rico.[3] Asimismo, del *Certificado de Incorporación* de Perón Inc. surge que el señor Pérez Román fue uno de sus incorporadores y también funge como el vicepresidente.[4]

---

[1] Este foro intermedio está en idéntica posición que el tribunal *a quo* para evaluar prueba documental. *González Hernández v. González Hernández*, 181 DPR 746, 777 (2011).

[2] Apéndice del recurso, pág. 294.

[3] Apéndice del recurso, pág. 295.

[4] Apéndice del recurso, pág. 297.

También, el expediente revela que el señor Pérez Román, el 17 de junio de 2022, compareció ante la notaria Mariela Pérez Ruiz para otorgar la escritura de compraventa número 75 en representación de Perón Inc. para adquirir el bien inmueble objeto de la multa administrativa.[5] Por último, el permiso de uso 2024-556113-PUS-302555 dispone que ¨[e]l Contratista Wilfredo Pérez Román, mediante el afidávit número 4954 el 16 de abril de 2024, juramentada ante el Notario Mariela Pérez Ruiz, ha certificado que la obra fue ejecutada de acuerdo con los planos y especificaciones del permiso de construcción aprobado y expedido bajo las casos número 2024-556113-PCOC-303028¨. De todo lo anterior es forzoso concluir que el señor Pérez Román, aunque no sea propiamente el dueño de la propiedad, ***ostenta autoridad o capacidad suficiente para vincular con sus propios actos a Perón Inc., corporación que figura como dueña registral.*** *Rivera Torres v. Díaz López, supra.*

Estamos conscientes de que, constituida la personalidad jurídica de la corporación, su existencia como ente jurídico es independiente de sus accionistas, directores y oficiales. *Peguero y otros v. Hernández Pellot*, 139 DPR 487, 502 (1995). Ello justifica que existan distinciones legales entre la corporación y las personas naturales que forman parte de ella. *Íd.* Así, aunque el señor Pérez Román ocupe la vicepresidencia y sea el agente residente de una corporación, esta tiene personalidad jurídica propia distinta de la del señor Pérez Román. *B. Muñoz, Inc. v. Prod. Puertorriqueña,* supra. No obstante, en la jurisprudencia citada se reconoce sin dificultad que los actos de los funcionarios principales de una corporación se imputan a la corporación, cuando estos actúan en el curso ordinario de sus funciones. *Rivera Torres v. Díaz Lópéz,* supra.

En este caso, como quedó visto, el vicepresidente de Perón Inc., señor Pérez Román, vía resolución corporativa, fue autorizado para actuar a

---

[5] Apéndice del recurso, pág. 270.

nombre de Perón Inc., corporación registrada con fines, precisamente, de *construcción y mantenimiento.* Como parte de esas funciones, este compareció en representación de Perón Inc. en la compraventa del inmueble objeto de la intervención de la Junta de Planificación. También en el curso ordinario de sus funciones, el vicepresidente de Perón Inc., señor Pérez Román, accedió a que el inspector de la Junta de Planificación le tomara fotos y medidas a la propiedad. Una vez realizada la referida inspección, se le orientó al señor Pérez Román de que había un permiso vencido y los cambios requeridos para su legalización. Este, indudable representante de la corporación, firmó la orden de cese y desista, tras ser apercibido de las consecuencias de su incumplimiento.

Entonces, el señor Pérez Román, en el curso ordinario de sus funciones en Perón Inc. ya descritas, representó a la corporación en una transacción para adquirir derechos propietarios, para lo cual no cabe concederle luego ampararse en su omisión de identificarse como representante de esta, con el fin de desvincularla cuando se lleva a cabo un procedimiento administrativo en su contra. Por lo tanto, no nos persuade el argumento de que el señor Pérez Román actuaba meramente como agente residente, o en su carácter personal, sin que su representado tuviese una oportunidad real de conocer la decisión administrativa, pues tuvo conocimiento **directo** tanto de la obra, como del procedimiento administrativo.

Queda establecido con lo hasta aquí discutido la expectativa razonable de que, a través del señor Pérez Román, Perón Inc. quedaría notificada de los procesos administrativos aludidos. Partiendo del presupuesto de que la notificación adecuada *no es un mero formalismo,* sino que tiene como propósito brindarles a las partes *la oportunidad de advenir en conocimiento real de la decisión tomada, a la vez que otorga a las personas cuyos derechos pudieran verse transgredidos una mayor oportunidad de determinar si ejercen o no los remedios disponibles por ley. Así, pues, se obtiene un balance justo*

*entre los derechos de todas las partes* [...]. *Picorelli Lopez v. Depto. de Hacienda*, 179 DPR 720, 737 (2010), tal fin fue alcanzado a través del señor Pérez Román.

c.

Entonces, atendiendo lo concerniente a si se justifica o no la concesión de un remedio, reiteramos que el *injunction* es uno *in personam*. De esto se sique que, como Perón Inc. actúa mediante sus representantes, puede exigirse su cumplimiento al señor Pérez Román. Puntualizamos que la existencia de un permiso posterior otorgado por la Junta de Planificación a nombre de Perón Inc.,[6] mientras aún estaba activo el procedimiento administrativo, no legaliza la obra ejecutada sin autorización.[7] Lo que precede cobra mayor relevancia a la luz de que Perón Inc. no hizo uso de las vías administrativas que sí tenía disponible, de manera que transcurrieron los términos para impugnar la determinación administrativa. Por ello, determinamos que, en esta etapa de los procedimientos, no se ha adjudicado en los méritos la procedencia del cese y desista contra Perón Inc.

En cuanto a la multa sobre un bien inmueble a favor de la Junta de Planificación, esta es una acción *in rem*, *ergo*, recae sobre la cosa misma, constituyendo un gravamen real sobre la propiedad. Esto es, la multa configura una hipoteca legal tácita que, incluso, no necesita constar en el Registro de la Propiedad para que sea válida y exigible. Véase Art. 55 de la Ley del Registro, supra, y *United Surety v. Registradora*, supra.[8] En consecuencia, la multa continúa gravando la propiedad, independientemente de que haya un cambio de titular. Ello, unido a nuestra determinación de que Perón Inc. recibió una notificación adecuada de los

---

[6] No debe pasar desapercibido que, a tenor con *Capo Cruz v. Junta de Planificación*, 204 DPR 581 (2020), la Junta de Planificación tiene un deber ministerial de atender e investigar la concesión de un permiso contrario a las leyes.

[7] Como regla general, un error administrativo no crea un estado de Derecho que obligue a un cuerpo administrativo ni impida su corrección. *Rivera Padilla v. OAT*, 189 DPR 315, 345 (2013).

[8] Aunque *United Surety v. Registradora*, supra, versa sobre contribuciones, juzgamos que el Art. 55, *supra*, hace este principio extensible a multas equiparables como las multas emitidas por una agencia sobre bienes inmuebles de los contribuyentes.

hallazgos por vía de su representante, señor Pérez Román, nos lleva a concluir que le corresponde satisfacer su pago junto al interés legal que se haya acumulado.

Por otra parte, según se desprende del Informe de la Junta de Planificación, el cual se presume correcto, al momento de la inspección conducida el **8 de marzo de 2023** había un permiso vencido a nombre del dueño del proyecto José M. Reyes por razón de no haber completado la obra dentro del término autorizado. Sin embargo, el señor Reyes aparece como parte vendedora en la aludida escritura núm. 75 del **17 de junio de 2022**. A pesar de ello, el señor Reyes también fue incluido en la notificación de hallazgos y orden de mostrar causa del **16 de junio de 2023** porque aún aparecía como dueño de la propiedad según los registros del CRIM.

De lo anterior cabe concluir que la Junta de Planificación actuó con diligencia razonable al momento de presentar la *Demanda*, pues utilizó la información más actualizada disponible del CRIM y sus registros. Evaluada la Ley Núm. 161-2009, *supra*, y el Reglamento Conjunto, *supra*, no hay un deber legal de revisar el Registro de la Propiedad cuando la propia ley provee, en su Artículo 2.7, *supra*, para que se use la información provista en el SUI.[9]

Además, la falta de diligencia de la parte apelada en hacer el cambio del titular no se le puede imputar a la parte apelante, y así pretender que se le exija que realice estudios de títulos como condición para ejercitar sus mecanismos de fiscalización.

En lo concerniente al emplazamiento de Perón Inc., al diligenciarlo a través del señor Pérez Román, se satisfizo plenamente la Regla 4.4 de Procedimiento Civil, *supra*, toda vez que se le notificó a la persona con autoridad legal para ser emplazada. *Rivera Torres v. Díaz López*, supra.

Nos permitimos reiterar que Perón Inc. no puede esgrimir desconocimiento de la acción administrativa y judicial instada en su contra,

---

[9] Con esta conclusión no queremos decir que la Junta de Planificación no se puede beneficiar del contenido del Registro de la Propiedad, sino que no se puede condicionar la validez de una notificación de una multa a que se haya realizado un estudio de título previo.

pues el propio vicepresidente, incorporador y agente residente, señor Pérez Román, en el ejercicio de sus funciones como tal, tuvo conocimiento directo de ambos procedimientos, de lo que cabe razonablemente atribuirle conocimiento a la corporación a través suya, con la oportunidad real de comparecer y defenderse.

d.

El último error señalado se circunscribe a impugnar la imposición de honorarios de abogados a la parte apelante. Aunque lo discutido en los párrafos que preceden debería servir para predecir el rumbo que acogemos, atenderemos brevemente el asunto.

Sépase que, a pesar de que la *Sentencia* apelada no contine una expresión específica sobre si la parte apelante actuó con temeridad, la imposición de honorarios de abogados implica que el foro juzgador así lo entendió, conforme al precedente establecido en *Montañez Cruz v. Metropolitan Cons. Corp.*, 87 DPR 38 (1962).

Sin embargo, al revisar el expediente constatamos que la Junta de Planificación actuó con razonabilidad y buena fe, basándose en la información disponible al momento de iniciar la acción administrativa y la consecuente acción judicial, sin incurrir en temeridad. Es decir, no acontecieron los elementos para la imposición de honorarios por temeridad, en tanto no apreciamos que la acción judicial iniciada estuviera carente de méritos y razonabilidad, o que se haya presentado con el fin de paralizar una obra o permiso sin fundamento en ley. Véase Art. 14.1 Ley Núm. 161-2009, *supra*; *Díaz Vázquez v. Colón Peña*, supra. Tampoco apreciamos que la conducta de la parte apelante revele *terquedad, obstinación, contumacia e insistencia desprovista de fundamentos* que justifique la penalidad que supone la imposición de honorarios de abogado. En consecuencia, y vistas las explicaciones que preceden, determinamos que el tribunal *a quo* abusó de su discreción al determinar temeridad.

## IV. Parte dispositiva

Por los fundamentos expuestos, que se hacen formar parte de esta sección, se *Revoca* la *Sentencia* apelada.

Lo acordó y manda el Tribunal y lo certifica su Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

## IV. Parte dispositiva

Por los fundamentos expuestos, que se hacen formar parte de esta sección, se *Revoca* la *Sentencia* apelada.

Lo acordó y manda el Tribunal y lo certifica su Secretaria.