Antonio Riera, recurrente, *v.* El Registrador de la Propiedad de San Juan, Sección Segunda, recurrido.

Núm. 1078.—*Sometido:* Noviembre 15, 1940. *Resuelto:* Noviembre 30, 1940.

*Antonio Riera,* por su propio derecho; el registrador recurrido no compareció.

El Juez Asociado Señor Travieso emitió la opinión del tribunal.

El Colector de Rentas Internas de Río Piedras vendió en pública subasta una finca rústica en cobro de contribuciones adeudadas por la Sucesión de Harry A. McCormick. La finca fué adjudicada a Antonio Riera, el aquí recurrente, a quien se expidió certificado de venta en 28 de septiembre de

1939, el cual fué inscrito a su favor el 31 de octubre del mismo año.

Transcurrido un año desde la fecha del certificado de venta, sin que ninguna persona interesada hubiese ejercitado el derecho de redención del inmueble, en 23 de octubre de 1940 el recurrente presentó al Registrador de la Propiedad de San Juan, Sección Segunda, una solicitud jurada en la que pedía la cancelación de dos anotaciones de *lis pendens* que afectan la finca adjudicada al peticionario recurrente. En la primera de dichas anotaciones se hizo constar la interposición de cierta demanda de nulidad de sentencia y otros extremos contra algunos de los componentes de la Sucesión McCormick. La segunda anotación, practicada en mayo 22, 1931, se refiere al pleito seguido ante la Corte de Distrito por Guadalupe McCormick Anaya y otros, contra la Sucesión de Harry A. McCormick, sobre querella de inoficioso testamento del causante y declaratoria de herederos.

La nota denegatoria contra la cual se ha interpuesto el presente recurso lee como sigue:

"Denegada la cancelación que se interesa en *affidavit* 1,089 de 23 del actual, ante. el notario Edelmiro Martínez Rivera, y tomada en su lugar anotación preventiva por 120 días a favor de Antonio Riera Bengoechea, al folio 245 vuelto del tomo 66 de Río Piedras, finca número 2,876, primero, porque no se trata de cancelar embargo ni hipoteca, que fué lo que tuvo en mente el legislador (*Colón* v. *Plazuela Sugar Co.*, 47 D.P.R. 871, 881 y *Baetjer* v. *Registrador* 52 D.P.R. 554) sino del derecho que el demandante tiene a asegurar su reclamación, establecido por el artículo 91 del Código de Enjuiciamiento Civil, que rige desde 1904, en tanto que el 352 del Código Político, que cita el solicitante, está en vigor desde mucho antes; segundo, porque la Hon. Corte Suprema en el caso *Fernández* v. *Registrador* (52 D.P.R. 354) resolvió que la cancelación de un aviso de demanda 'podía obtenerse fácilmente, desde luego, al terminar el litigio y que, hasta entonces, debe continuar en vigor a menos que la corte ordene su cancelación,' lo cual significa, muy claramente, cómo debe cancelarse una anotación de demanda, y, agregó, 'que los Registradores no estaban autorizados para cancelar avisos de demanda como disponía la sección (*b*) de la Ley 12 de 1923'; tercero, por-

que los demandantes, que anotaron su derecho, aparecen notificados por medio del periódico *'La Democracia,'* por ignorarse su paradero sin que se acredite ni siquiera se manifieste que se cumplió antes con lo dispuesto en el artículo 94 del Código de Enjuiciamiento Civil, expresivo de las diligencias que previamente deben practicarse, o sea las de no encontrarse en la Isla la persona que ha de citarse para entonces publicar los correspondientes edictos; cuarto, porque según ha resuelto la Hon. Corte Suprema (*Velázquez* v. *Registrador*, 27 D.P.R. 268) son perfectamente compatibles los artículos 42 de la Ley Hipotecaria y el 91 del Código de Enjuiciamiento Civil y tales anotaciones sólo pueden cancelarse conforme al artículo 82 de la Ley Hipotecaria, por orden judicial, por sentencia favorable al demandante, o cuando éste abandona el pleito (número 2, artículo 140 del Reglamento dictado para la aplicación de la Ley Hipotecaria, y *Franco* v. *Registrador*, 12 D.P.R. 215); quinto, porque si bien las anotaciones de demanda no varían la naturaleza de la obligación, a cuya seguridad se practican, garantizan su cumplimiento de modo que llevan necesariamente consigo la prohibición de enajenar, en perjuicio del derecho de la persona a cuyo favor se hubiese hecho la anotación, prohibición que era absoluta antes de regir la Ley Hipotecaria (Sentencia de 14 de noviembre de 1874 (30 J.C. 690)); sexto, porque las dos notas marginales, cuya cancelación se interesa, se refieren a un pleito o querella de inoficioso testamento y se solicita la nulidad de la institución de herederos de Harry A. McCormick y se adjudiquen los bienes (entre los que figura la finca en cuestión) a los demandantes como hijos naturales del testador, excepto los legados que no sean inoficiosos, constando de la nota de 6 de agosto de 1935, que ese litigio se halla en apelación ante la Hon. Corte Suprema y resultaría ilusorio, para los demandantes, que se les cancelara el derecho que anotaron oportunamente, cuando su reclamación pende de fallo y, por la última nota de 14 de enero de 1938, que es anterior a la subasta, se anota de nuevo el. mismo pleito; séptimo, porque el rematista conocía el estado de la finca cuando concurrió al remate puesto que las notas son de 4 de diciembre de 1930 y 31 de mayo de 1931 y, por consiguiente, no se trata de carga o gravamen posterior al anuncio de la subasta de la finca, en cuyo caso procedería la cancelación, aplicando lo dispuesto en el artículo 125 de la Ley Hipotecaria, 'si el valor de lo vendido o adjudicado no igualare o superare al crédito que se realiza,' pero nunca al gravamen anterior a tal punto que si en la subasta no se ofreciere cantidad suficiente para pagar los créditos anteriormente inscritos, se dejará sin efecto

el remate (artículo 128 de la Ley Hipotecaria, párrafo cuarto); octavo, porque hasta la fecha la única decisión que hemos encontrado ordena al Registrador cancelar gravámenes *posteriores* (bastardillas nuestras) cuando vendida en pública subasta una finca para pago de contribuciones (*Márquez v. Registrador,* 11 D.P.R. 268) puede aplicarse, dice, lo dispuesto en el artículo 125 de la Ley Hipotecaria, por analogía; noveno, porque la libertad de gravámenes, como muy bien dice la Resolución en el caso de *Baetjer* (la Eastern) v. *Registrador* (52 D.P.R. 554), 'no se extiende a las servidumbres que son cargas de naturaleza distinta a las que tuvo en mente el legislador al decretar el artículo 347 del Código Político,' lo cual demuestra, sin duda alguna, que no debe interpretarse de modo absoluto el precepto del Código Político al disponer que al rematista se le entregue la finca libre de todo gravamen.''

La solicitud de cancelación radicada por el recurrente se basa en las disposiciones del segundo párrafo del artículo 347 del Código Político, que transcribimos a continuación:

''Artículo 347.—     *     *     *     *     *     *

''Si el derecho de redención que más adelante se dispone no se ejercitare dentro del tiempo prescrito, *dicho certificado,* una vez inscrito en el registro de la propiedad del distrito donde radique dicha propiedad, *constituirá título absoluto* de dicha propiedad a favor de dicho comprador, *libre de toda hipoteca, carga o cualquier otro gravamen . . . .*'' (Bastardillas nuestras.)

El lenguaje del estatuto es tan claro, que no es posible tener duda alguna en cuanto a la intención del legislador. No se conformó éste con decir que el certificado de compra que se expide al comprador de bienes inmuebles vendidos en pública subasta, por falta de pago de contribuciones, constituirá al ser inscrito en el registro un *título absoluto* sobre la propiedad; y fué más allá para decir que el título absoluto que tuvo en mente es uno *libre de toda hipoteca, carga o cualquier otro gravamen.*

¿Son las anotaciones de *lis pendens* de cuya cancelación se trata, cargas o gravámenes, dentro del significado del estatuto que otorga al comprador un título absoluto? Lo son, a nuestro juicio.

El artículo 91 del Código de Enjuiciamiento Civil, por virtud del cual se hicieron dichas anotaciones, provee:

"Artículo 91.—Cuando en *una acción que afecte al título o al derecho de posesión de una propiedad inmueble*, el demandante :l tiempo de presentar la demanda, y el demandado al tiempo de presentar la contestación o en cualquier tiempo después, pidieren se declare que lo que se reclama es suyo, podrán presentar para su anotación al registrador del distrito en que radicare la propiedad o parte de ella un aviso de la cuestión litigiosa pendiente, el cual contendrá los nombres y apellidos de las partes, el objeto de la demanda o contestación, y la descripción de la propiedad en litigio. Sólo desde el día de la presentación del aviso para ser anotado se considerará que el comprador o la persona que adquiera un gravamen sobre la propiedad litigiosa, tiene conocimiento, para los efectos legales, de la acción pendiente contra las partes designadas por sus nombres verdaderos."

Es indudable que cuando la acción que se ejercita afecta el título o el derecho de posesión de un inmueble y el aviso de la cuestión litigiosa pendiente se anota en el registro, toda persona que adquiere el título o un gravamen sobre el inmueble con posterioridad a la fecha de la presentación, carece de la condición de tercero y su título o gravamen queda sujeto a las resultancias del pleito a que se refiere la anotación. Si el aquí recurrente hubiese adquirido la finca por compra a sus dueños, según el registro, su situación legal sería distinta a la que ocupa en el presente recurso.

El Pueblo de Puerto Rico tiene un gravamen legal preferente para el cobro de la contribución que se impusiere por el corriente año económico y por los tres años económicos anteriores sobre cada propiedad inmueble. Y ese gravamen "tendrá prelación sobre cualesquiera otros gravámenes sobre dicha finca o parcela, de cualquier naturaleza que fuesen, ya pesen éstos sobre ella antes o después que el gravamen determinado por dicha contribución." (Artículo 315 del Código Político, arts. 1823 y 1824 del Código Civil, sección 1 de la Ley núm. 14 de agosto 24, 1933 (2) pág. 77.) Todo acreedor hipotecario al inscribir su hipoteca y todo demandante al

anotar su aviso de *lis pendens,* sabe que sus derechos están sujetos al gravamen legal preferente a favor del Tesoro Insular, y que el único remedio que tienen para la protección de esos derechos es el de pagar las contribuciones pendientes por las tres últimas anualidades más la corriente o redimir la finca antes de que expire el plazo de redención.

Si, como dispone el artículo 347 del Código Político, supra, el título que obtiene el comprador en una subasta pública para cobro de contribuciones es un título absoluto y libre de toda hipoteca, carga o cualquier otro gravamen, es natural que proceda la cancelación de cualquiera hipoteca, carga o gravamen que aparezca inscrito en el registro, sin tener en cuenta la fecha en que se hubiere hecho la inscripción. Así lo resolvió este Tribunal Supremo en *Márquez* v. *Registrador,* 11 D.P.R. 268. El recurrido cita este caso como autoridad para sostener su contención de que el registrador está autorizado solamente para cancelar gravámenes *posteriores,* considerando como posteriores tan sólo aquellos que aparecen inscritos con posterioridad a la anotación del embargo trabado en el procedimiento de apremio. Tal contención es a nuestro juicio insostenible. El recurrido, al formularla, no tuvo en cuenta que las disposiciones estatutarias que hemos citado conceden al Pueblo de Puerto Rico un gravamen que tiene prelación sobre cualesquiera otros gravámenes "de cualquier naturaleza que fuesen, ya pesen éstos sobre ella (la finca) antes o después que el gravamen determinado por dicha contribución." En otras palabras, cuando se trata de una venta en procedimiento de apremio para cobro de contribuciones, todos los gravámenes y cargas que aparezcan en los libros del registro son posteriores al gravamen preferente que la ley establece a favor del Gobierno. De no ser así, ese gravamen no podría ser considerado como primero y preferente, y la prelación que le concede el artículo 315 del Código Político nada significaría.

El caso de *Fernández* v. *Registrador*, 52 D.P.R. 354, citado por el recurrido en apoyo de su contención de que la anotación de un aviso de demanda debe continuar en vigor hasta la terminación del litigio, a menos que una corte ordene su cancelación, ha sido expresamente revocado por esta Corte Suprema en el caso de *Teodoro Aguilar* v. *Registrador de la Propiedad de San Juan,* (ante, pág. 610). En la opinión emitida en dicho caso se adoptó como válida la doctrina sentada por el caso de *Morales* v. *Registrador,* 40 D.P.R. 242, en el que se resolvió que tanto los avisos de demanda inscritos en el registro a virtud de orden judicial, como los que se hubieren inscrito con arreglo al artículo 91 del Código de Enjuiciamiento Civil, pueden ser cancelados a petición de parte' interesada y sin necesidad de orden judicial, cuando hubiere transcurrido el término de cuatro años desde su anotación, si dicho término no hubiere sido prorrogado por orden de la corte en que pendiere el caso, por justa causa. (Artículo 388 A, Ley Hipotecaria, Ley núm. 12 de 29 de agosto de 1923 (2) pág. 37.)

Las cancelaciones que se solicitan en el caso de autos no se basan en la expiración del término de cuatro años desde su anotación en el registro. El fundamento legal de la petición es que los derechos adquiridos por los demandantes, a virtud de las dos anotaciones de demandas, han quedado extinguidos por declaración expresa de la ley. Artículo 315 del Código Político.

El título adquirido por el recurrente no puede ser afectado en modo alguno por las resultancias de los litigios a que se refieren las anotaciones de demanda y procede por tanto su cancelación. Véase apartado 2, artículo 82, Ley Hipotecaria.

Constituyendo las contribuciones adeudadas por la Sucesión McCormick el primer gravamen que pesaba sobre la propiedad vendida en pública subasta y adquirida por el recurrente, éste, como comprador, tiene derecho a que se le en-

tregue la finca libre de gravámenes, de cualquier naturaleza que fuesen y sin tener en cuenta la fecha en que dichos gravámenes se hubiesen inscrito. Es deber del registrador practicar la cancelación de los gravámenes sin necesidad de orden judicial, siendo para ello título bastante el certificado de venta otorgado por el colector de rentas internas a favor del comprador recurrente y presentado por éste al registro. Dicho certificado es un documento auténtico inscribible, de los comprendidos en el artículo 3 de la Ley Hipotecaria. Véase *Márquez* v. *Registrador,* supra.

Alega el registrador recurrido, entre los fundamentos de su nota denegatoria, que los demandantes que anotaron sus demandas en el Registro aparecen notificados por medio de edictos, por ignorarse su paradero, "sin que se acredite ni siquiera se manifieste que se cumplió antes con lo dispuesto en el artículo 94 del Código de Enjuiciamiento Civil, expresivo de las diligencias que previamente deben practicarse o sea las de no encontrarse en la Isla la persona que ha de citarse para entonces publicar los correspondientes edictos."

El artículo 315 del Código Político provee que cuando se embargue y se venda una propiedad inmueble para el cobro de contribuciones, el Tesorero de Puerto Rico notificará de dicha venta a todas las personas que tengan una hipoteca u otro gravamen inscrito en el registro. La notificación deberá expresar la fecha de la venta, el precio por el cual se vendió la propiedad y cualesquiera otros datos que el Tesorero estime convenientes. Nada dice el estatuto en cuanto a la forma y manera en que deberá darse el aviso. En el caso de autos, el certificado del Colector hace constar "que según lo dispone el artículo 315 del Código Político de Puerto Rico, se ha notificado de esta venta a . . . y a María McCormick viuda Serrano, Guadalupe, Gabina y Francisca McCormick, como personas con interés en este remate, o a sus herederos o cesionarios desconocidos, por medio de edicto publicado en el periódico 'La Democracia' durante los días 21, 22, 23,

25, 26 y 27 de septiembre de 1939.'' No estaba el Tesorero de Puerto Rico obligado a hacer entrega personal de la notificación a las mencionadas personas. Debemos presumir que de ser posible esa notificación personal el Tesorero la hubiese hecho, en vez de recurrir al medio más dilatorio y costoso de la notificación por edictos. El artículo 94 del Código de Enjuiciamiento Civil no es de aplicación al procedimiento de apremio para cobro de contribuciones. Como se verá por su simple lectura, dicho artículo se refiere exclusivamente al procedimiento que deberá seguir un demandante para citar o emplazar al demandado por medio de edictos, cuando dicho demandado reside fuera de la isla, se ha ausentado o no puede ser hallado a pesar de la debida diligencia usada para poder emplazarle personalmente como requiere el artículo 93 del mismo código. El procedimiento de apremio se rige por las disposiciones del Código Político entre las cuales no encontramos ninguna que obligue al Tesorero de Puerto Rico a cumplir con los requisitos del artículo 94 del Código de Enjuiciamiento Civil, como condición previa para la validez de la notificación de una venta por medio de edictos.

*Por las razones expuestas debe revocarse la nota recurrida y ordenarse al registrador que proceda a practicar la cancelación de las anotaciones de demandas, de acuerdo con la petición del recurrente.*