ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| FRANKLIN CREDIT MANAGEMENT CORPORATION COMO AGENTE DE SERVICIO DE WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS CERTIFICATE TRUSTEE OF BOSCO CREDIT II TRUST SERIES 2017 1<br><br>PETICIONARIA<br><br>VS.<br><br>CARLOS IVÁN ARCE LÓPEZ, ANNETTE CANCEL LORENZANA Y LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA POR AMBOS; ECRA GROUP CORP.; UNITED STATES ATTORNEY'S OFFICE, DISTRICT OF PUERTO RICO<br><br>RECURRIDA | TA2026CE00292 | *Certiorari* procedente del Tribunal de Primera Instancia Sala Superior de Bayamón<br><br><br><br>Caso Núm.: VB2024CV00438<br><br><br><br>Sobre: Cobro de dinero y ejecución de hipoteca |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Ronda Del Toro y la Juez Lotti Rodríguez.

Lotti Rodríguez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de marzo de 2026.

Comparece Franklin Credit Management Corporation como Agente de Servicio de Wilmington Savings Fund Society, FSB, Not in Its Individual Capacity But Solely as Certificate Trustee of Bosco Credit II Trust Series 2017-1 (FCMC o parte peticionaria), mediante *Petición de Certiorari* presentada el 9 de marzo de 2026 y nos solicita que revisemos dos órdenes dictadas el 13 de enero de 2026 por el Tribunal de Primera Instancia, Sala Superior de Vega Baja (TPI o foro primario). En estas, el TPI ordenó el pago parcial a favor de la parte peticionaria producto de la venta judicial y la consignación de fondos a favor del CRIM por concepto de deuda contributiva.

**I.**

El 25 de junio de 2024, FCMC presentó una *Demanda*[1] sobre cobro de dinero y ejecución de hipoteca contra Carlos Iván Arce López, Annette Cancel Lorenzana y la Sociedad Legal de Bienes Gananciales compuesta por ambos (señores Arce-Cancel), ECRA Group Corp. (ECRA) y Estados Unidos de América (en conjunto, recurridos), alegando incumplimiento con las obligaciones asumidas por los señores Arce-Cancel y ECRA en un préstamo hipotecario otorgado el 31 de octubre de 2007.

El 27 de febrero de 2025, el TPI dictó *Sentencia en Rebeldía*[2] en la cual declaró Con Lugar la *Demanda* y condenó solidariamente a la parte demandada al pago de las sumas adeudadas conforme al contrato hipotecario. Asimismo, el foro primario dispuso que, en caso de incumplimiento con el pago, se procediera a vender la propiedad en pública subasta. Dicha sentencia fue notificada el 13 de marzo de 2025 y publicada por edicto el 21 de marzo de 2025.[3]

El 14 de mayo de 2025, la parte peticionaria presentó una *Solicitud de Ejecución de Sentencia*[4], alegando que la parte demandada no había satisfecho la obligación impuesta mediante la sentencia.

El 20 de junio de 2025, el Tribunal dictó *Orden de Ejecución de Sentencia y Venta de Bienes*[5], mediante la cual autorizó la venta en pública subasta del inmueble hipotecado y dispuso los términos para su celebración.

Posteriormente, el 9 de octubre de 2025, se celebró la segunda subasta pública, según surge del *Acta de Segunda Subasta*[6], en la cual la propiedad fue adjudicada a Dream Team Group LLC d/b/a Golden Properties por la suma de $221,901.00.

---

[1] Entrada Núm. 1 del Sistema Unificado de Manejo y Administración de Casos (SUMAC) del TPI.
[2] Entrada Núm. 32 del SUMAC del TPI.
[3] Entradas Núm. 36 y 37 del SUMAC del TPI.
[4] Entrada Núm. 39 del SUMAC del TPI.
[5] Entrada Núm. 41 del SUMAC del TPI.
[6] Entrada Núm. 47 del SUMAC del TPI.

El 10 de octubre de 2025, FCMC presentó una *Solicitud de Retiro de Fondos*[7], informando que el balance de la deuda al 9 de octubre de 2025 ascendía a $339,578.91, y solicitando la entrega del producto de la venta judicial.

El 16 de octubre de 2025, el foro primario ordenó a la parte peticionaria presentar declaración jurada de posteo de la subasta y certificación de deuda del Centro de Recaudación de Ingresos Municipales (CRIM).[8]

El 23 de octubre de 2025, FCMC presentó una *Moción en Cumplimiento de Orden*[9] acompañando los documentos requeridos en la orden del TPI.

El 29 de octubre de 2025, el TPI dictó *Orden de Confirmación de Adjudicación o Venta Judicial*[10], mediante la cual determinó que el procedimiento de subasta cumplió con las formalidades legales aplicables y confirmó la adjudicación del inmueble realizada el 9 de octubre de 2025.

El 19 de noviembre de 2025, la parte peticionaria presentó *Moción Reiterando Solicitud de Retiro de Fondos*[11], indicando que aún no se había emitido orden para el desembolso del producto de la subasta.

El 12 de enero de 2026, notificada el 13 de enero de 2026, el foro primario dictó *Orden*[12] mediante la cual dispuso la expedición de un cheque a favor de la parte peticionaria por la suma de $209,174.11, más los intereses correspondientes. En esa misma fecha, el TPI dictó otra *Orden*[13] mediante la cual, a base de la certificación de deuda del CRIM, dispuso la consignación de fondos a favor de dicha entidad por el total de la deuda de $12,726.89, y autorizó el retiro del remanente a favor de FCMC conforme a lo previamente ordenado.

---

[7] Entrada Núm. 49 del SUMAC del TPI.
[8] Entrada Núm. 51 del SUMAC del TPI.
[9] Entrada Núm. 52 del SUMAC del TPI.
[10] Entrada Núm. 53 del SUMAC del TPI.
[11] Entrada Núm. 54 del SUMAC del TPI.
[12] Entrada Núm. 55 del SUMAC del TPI.
[13] Entrada Núm. 56 del SUMAC del TPI.

El 26 de enero de 2026, la parte peticionaria presentó una *Solicitud de Reconsideración*[14] respecto a las órdenes notificadas el 13 de enero de 2026, alegando que el adquiriente en venta judicial adquiere la propiedad con las cargas y gravámenes, incluida la deuda que pudiese existir del CRIM, por lo cual solicitó que se expidiera el cheque por la cantidad de $221,901.00.

El 28 de enero de 2026, el foro primario ordenó paralizar la entrega de los cheques hasta tanto se resolviera la solicitud de reconsideración.[15]

Finalmente, el 5 de febrero de 2026, el TPI dictó una *Resolución y Orden*[16] mediante la cual declaró No Ha Lugar la solicitud de reconsideración y dispuso la consignación de fondos a favor del CRIM y el desembolso del balance correspondiente a la parte demandante. En su determinación, el foro primario concluyó que la deuda a favor del CRIM, al constituir una hipoteca legal tácita de carácter preferente a cualquier otro gravamen, debía satisfacerse con prioridad al crédito hipotecario a favor de la peticionaria.

Inconforme, el 9 de marzo de 2026, FCMC acudió ante este Tribunal mediante el presente recurso de *certiorari*, en el que señala como único error lo siguiente:

> **ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NO ADJUDICAR LA TOTALIDAD DEL PRODUCTO DE LA SUBASTA AL ACREEDOR HIPOTECARIO Y AL ORDENAR EL DESCUENTO DE $8,310.34 [sic] A FAVOR DEL CRIM POR CONCEPTO DE HIPOTECA LEGAL TÁCITA.**

Transcurrido el término concedido a la parte recurrida para presentar su posición sobre los méritos del recurso, procedemos a disponer.

## II.

### A. *Certiorari*

El recurso de *certiorari* es un mecanismo procesal de carácter discrecional que faculta a un tribunal de mayor jerarquía a revisar las decisiones emitidas por un tribunal inferior. *BPPR v. SLG Gómez-López*, 213

---

[14] Entrada Núm. 57 del SUMAC del TPI.
[15] Entrada Núm. 58 del SUMAC del TPI.
[16] Entrada Núm. 60 del SUMAC del TPI.

DPR 314, 336 (2023); *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021). "La característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos". *BPPR v. SLG Gómez-López, supra*, pág. 337; *Rivera et al. v. Arcos Dorados et al., supra*, pág. 209; *IG Builders et. al. v. BBVAPR*, 185 DPR 307, 338 (2012). Esta discreción se ha definido como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *Pueblo* v. *Rivera Montalvo*, 205 DPR 352, 373 (2020); *Negrón* v. *Srio de Justicia*, 154 DPR 79, 91 (2001).

Sin embargo, la discreción para expedir el recurso no es irrestricta, ni autoriza al tribunal a actuar de una forma u otra en abstracción del resto del Derecho. *Pueblo v. Rivera Montalvo, supra*, pág. 372, citando a *Negrón v. Srio. De Justicia, supra*; *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728-729 (2016).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, delimita nuestra autoridad y prohíbe la intervención en las determinaciones interlocutorias emitidas por el Tribunal de Primera Instancia, salvo en contadas excepciones. *Scotiabank de Puerto Rico v. Zaf Corporation*, 202 DPR 478, 486-487 (2019). Lo previamente señalado persigue evitar dilaciones al revisar controversias que pueden esperar a ser planteadas a través del recurso de apelación. *Id.* Así pues, la Regla 52.1 de Procedimiento Civil, *supra*, dispone que podemos expedir el recurso de *certiorari* para resolver resoluciones u órdenes interlocutorias dictadas por el foro primario cuando:

> [S]e recurra de una resolución u orden bajo las Reglas 56 [Remedios Provisionales] y 57 [*Injuction*] o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias [...] cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios

evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. 32 LPRA Ap. V, R. 52.1.

Ahora bien, nuestro Tribunal Supremo, al interpretar la Regla 52.1 de Procedimiento Civil, *supra*, ha resuelto que "[l]as resoluciones atinentes a asuntos postsentencia [como la de autos] no se encuentran comprendidas entre aquellas determinaciones de naturaleza interlocutoria categóricamente sujetas a escrutinio mediante el recurso de *certiorari*." *IG Builders et al. v. BBVAPR, supra*, pág. 339. Por ello, cuando se recurre de un asunto postsentencia, para determinar si procede expedir o denegar un recurso de *certiorari* debemos evaluar los criterios enmarcados en la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendado, *In re Aprob Enmdas. Reglamento TA*, 2025 TSPR 141, 216 DPR ___ (2025), R. 40. *Id.* Los criterios esbozados son los siguientes:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

No obstante, ninguno de los criterios antes citados es determinante, por sí solo, para este ejercicio y no constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005), citando a H. Sánchez Martínez, *Derecho Procesal Apelativo*, Hato Rey, Lexis-Nexis de Puerto Rico, 2001, pág. 560.

Asimismo, es preciso señalar que, de ordinario, los tribunales revisores no intervienen con el manejo de los casos de los tribunales de instancia, salvo cuando "se demuestre que este último actuó con prejuicio o parcialidad, que hubo un craso abuso de discreción, o que se equivocó en la interpretación o aplicación de alguna norma procesal o de derecho sustantivo". *Rivera y Otros v. Bco. Popular*, 152 DPR 140, 155 (2000), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

## B. Hipoteca legal tácita

En nuestro ordenamiento jurídico, el poder para imponer y cobrar contribuciones ha sido delegado por la Asamblea Legislativa a los municipios, quienes ostentan, además, los derechos y rango de créditos y gravámenes preferentes sobre la propiedad. *United Surety v. Registradora*, 192 DPR 187, 204 (2015). En ese contexto, la Ley Núm. 210-2015, según enmendada, conocida como *Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico*, 30 LPRA secs. 6001 *et seq.*, reconoce la existencia de una hipoteca legal tácita a favor del Centro de Recaudación de Ingresos Municipales (CRIM) sobre los bienes inmuebles por concepto de contribuciones adeudadas. Art. 55 de la Ley Núm. 210-2015, 30 LPRA sec. 6082. Dicho gravamen surge por ministerio de ley, sin necesidad de inscripción, y constituye una carga real que grava el inmueble independientemente de su titular. *United Surety v. Registradora*, supra, pág. 205; *Buxó v. Álvarez & Zavala*, 104 DPR 678, 681-682 (1976).

Asimismo, esta hipoteca legal tácita ostenta carácter preferente sobre cualquier otro gravamen, incluso frente a acreedores hipotecarios o terceros adquirentes que hayan inscrito sus derechos, lo que le confiere un rango superior en el orden de prelación de créditos y cuyo efecto "es el mismo que un fallo judicial contra la propiedad". Art. 55 de la Ley Núm. 210-2015, *supra*; *United Surety v. Registradora, supra.*

En consecuencia, los créditos contributivos correspondientes —incluyendo las anualidades adeudadas— deben ser satisfechos con prioridad sobre otras acreencias que recaigan sobre el inmueble. *United Surety v. Registradora, supra.* Es decir, "**[t]odo acreedor hipotecario al inscribir su hipoteca** y todo demandante al anotar su aviso de *lis pendens*, **sabe que sus derechos están sujetos al gravamen legal preferente a favor del Tesoro Insular'**, por lo que sus únicas alternativas son el pagar lo adeudado o utilizar el mecanismo de redención establecido en la ley." *Id.*; *Riera v. Registrador*, 57 DPR 673, 677-678 (1940). (Énfasis nuestro).

Por ello, en el contexto de una venta judicial, el carácter preferente de esta hipoteca incide directamente en la distribución del producto de la subasta, de modo que la deuda contributiva debe ser satisfecha con prioridad antes de la adjudicación del remanente al acreedor hipotecario, conforme al orden de prelación dispuesto por ley. Arts. 55 y 108 de la Ley Núm. 210-2015, 30 LPRA secs. 6082 y 6145; *United Surety v. Registradora, supra.*

**III.**

En el presente caso, la parte peticionaria sostiene que el TPI erró al no adjudicarle la totalidad del producto de la subasta y al ordenar la consignación de una suma a favor del CRIM. No obstante, del expediente surge que el foro primario actuó conforme al marco normativo aplicable.

En particular, el foro primario consideró la existencia de una deuda contributiva certificada a favor del CRIM y determinó que dicha acreencia constituía una hipoteca legal tácita de carácter preferente sobre el inmueble objeto de la ejecución. A tenor con la Ley Núm. 210-2015, *supra*, dicho gravamen goza de prelación sobre otras acreencias y debe ser reconocido en la distribución del producto de la venta judicial.

Así, al ordenar la consignación de una porción de los fondos producto de la subasta para satisfacer el crédito contributivo y autorizar el retiro del

remanente a favor de la parte peticionaria, el foro primario aplicó correctamente el orden de prelación de créditos dispuesto por ley.

En consecuencia, expedimos el auto de *certiorari* y se confirman las determinaciones recurridas.

**IV.**

Por los fundamentos antes expuestos, se expide el auto de *certiorari* y se confirman las órdenes del 13 de enero de 2026.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones